## ANDREW W. MUNK, RESPONDENT, v. THE CITY OF WATERTOWN, APPELLANT.

67  261
47ap632
67h 261
51ad398
67h 261
55ad506
67h 261
61ad349

*Municipal corporations — liability for damages resulting from a defective sewer — negligence—notice—damages —loss of wife's services—absence of evidence of value.*

Where the exercise of a judicial or discretionary power by a municipal corporation in adopting plans for a sewer results in a direct and physical injury to the property of an individual, which, from its nature, is liable to be repeated and continuous, but is remediable by a change of plan, the corporation is liable for such damages as occur in consequence of its negligence after notice thereof.

On the trial of an action against a city for damages from a defective sewer, the court, after charging the jury that it was not sufficient to charge the city with liability that the sewer was insufficient, but that they must also find that the city had notice prior to the alleged flooding of the plaintiff's premises, added: "I think you will have no difficulty in finding for the affirmative."

*Held,* that, by this remark, the judge did not take the case from the jury; that he did no more than express an opinion as to the evidence, leaving the jury at liberty to find in accordance with the testimony on the subject.

That the city could not escape the consequences of a change from the plan and specifications for a sewer, simply because there was no resolution of the common council passed authorizing the change, when it appeared that one of the aldermen directed the change and that the city had approved of the sewer as constructed, when it settled with the contractor.

Where the loss of a wife's services through sickness is claimed as an item of damages from negligence, the plaintiff cannot recover substantial damages in the absence of evidence as to the value of the services performed by the wife when in health, and of the character or extent of the work performed by her in keeping the plaintiff's house.

APPEAL by the defendant, the City of Watertown, from a judgment of .the Supreme Court; entered in the office of the clerk of Jefferson county on the 6th day of May, 1892, on a verdict rendered at the Jefferson Circuit in favor of the plaintiff, Andrew W. Munk, for $250 damages ; and also from an order denying a motion for a new trial made on the minutes, dated May 9, 1892.

Plaintiff alleges damages sustained to his premises, and loss of services of his wife by reason of sickness caused by large quantities of water, filth and sewage being driven into his cellar and upon his premises situated on the east side of Sherman street in the city of Watertown, occurring in the months of January, March, April and July, 1891.

In the year 1890, the common council of the city of Watertown changed the system of sewage theretofore existing, so far as it affected the premises of the plaintiff, causing the sewer to be torn up which theretofore ran past the premises of the plaintiff, and inaugurated proceedings for the construction of a new sewer, with a view of draining a much larger territory than the old sewer, and with a view of discharging the same, in a different direction through Sherman street, into what is known as Baker street sewer. An engineer prepared plans and specifications; the contract was let in pursuance thereof, and the work was carried forward, after such proceedings had in the common council; the sewer was commenced on the 9th day of September, and completed about the 23d day of October, 1890. According to such plans and specifications, no provision was made for taking into such sewer the large quantities of water that theretofore had gathered, and subsequently did gather in what is known as Camp's ditch; however, during the construction of the sewer, with the knowledge of several officers of the defendant, and by the

direction of one of them, an opening was made in the sewer so as to take in the waters of Camp's ditch, one of the aldermen making the suggestion or request to the parties in charge of the construction. Camp's ditch water was turned into the sewer before the completion of the same, and before a report was made to the common council of the construction of the sewer, and of the completion thereof under the terms of the contract, apparently with the knowledge of several of the officers of the opening made to receive the waters from Camp's ditch, which knowledge they derived before the report of the engineer and the claim of the contractor for the construction of the sewer were received and approved. Evidence is given of acts of the defendant subsequently in shutting out from the sewer the water of Camp ditch, and of various other acts and measures resorted to by the defendant to remedy the difficulties which were found to exist in the sewers after the completion of the work by the contractor as aforesaid. Evidence was also given tending to show that Camp's ditch, at various seasons of the year, held large quantities of water which was filthy, and drained a large territory used for gardening and other purposes; that the waters thereof were impregnated with drainages from manure and sewers. Extensive evidence relating to plaintiff's damage appears in the case, and defendant produced evidence of the orders of the common council in respect to a new system of sewage, and some evidence tending to contradict and rebut the testimony offered by the plaintiff on the main issues raised by the evidence of the plaintiff.

*John N. Carlisle*, for the appellant.

*Elon R. Brown*, for the respondent.

HARDIN, P. J.:

Upon the close of the evidence the trial judge ruled that he would submit to the jury, first, "the question of the negligence of the city in not furnishing an outlet for the flow of the Woodruff, Sherman and Washington street sewer, so it set it back in the premises of the plaintiff at the time alleged in the complaint and proved on the trial;" and, second, "also on the question of damages." By this ruling, apparently, all other questions were eliminated from the case and those two questions were presented to the jury by a charge

which commented upon the evidence bearing upon those questions. Appellant's learned counsel attempts to shield the defendant from liability by proof of certain plans and specifications which were adopted by the common council, and insists that in the exercise of its dircretionary powers and functions of a judicial nature, it should be exempt from liability.

He calls our attention to numerous cases that are reviewed and referred to in *Seifert* v. *City of Brooklyn* (101 N. Y., 136). In that case, however, it was held viz. : " A municipal corporation has no right, in the exercise of its power to determine when, where and how to make improvements, to do so upon a plan which substantially involes the appropriation by it of the property of a citizen to a public use without making compensation therefor. Where exercise of a judicial or discretionary power by a municipal corporation results in a direct and physical injury to the property of an individual which, from its nature, is liable to be repeated and continuous, but is remediable by a change of plan and the adoption of prudential measures, the corporation is liable for such damages as occur in consequence of its continuance of the original cause, after notice and an omission to adopt measures to remedy the evil." In that case it is said : " It does not shield the corporation where injury results solely from the defective manner in which the authority was originally exercised and from continuance in wrong after notice of the injury."

In the decision in *Garratt* v. *Trustees of Village of Canandaigua* (16 N. Y. Supp., 717 ; S. C., affirmed, 32 N. E. Rep., 142), we do not understand that the doctrine of the Seifert case is disturbed. In the Garratt case in the opinion delivered in the Court of Appeals, it is said : " It is not alleged or found, and there is no request to find, that the defendants have omitted any duty that they owe to the plaintiff, with respect to the construction of the gates or the manner of their operation. It is not found, and there is no request to find that in any of these particulars the defendants or their predecessors have been guilty of any negligent or unlawful act." In the case in hand evidence was given tending to show negligence on the part of the defendant. In the case before us as soon as the plaintiff's premises were flooded on the 1st of January, 1891, he sought out several of the officers of the defendant and called their

attention to the circumstances attending the flooding of his premises and the deposit therein of filthy waters and noxious matters; and within a few days a committee in behalf of the common council visited the premises of the plaintiff and made an inspection of the premises. Surely on that occasion the defendant had knowledge that the sewer was inadequate and insufficient for the purpose for which it was designed. Shortly thereafter the defendant, by its agent, sought to remedy the defects and to remove the cause of the flooding of the premises of the plaintiff; however, their efforts were insufficient until after the damages mentioned in the complaint were sustained by the plaintiff and his wife. After a careful perusal of the evidence we are of the opinion that the same warranted a finding by the jury of negligence on the part of the defendant, and that the case falls within the principles laid down in the Seifert case. It seems some injuries were done to the plaintiff's premises in the month of November, and a claim therefor was presented to the defendant and allowed. Probably, then, the defendant obtained information sufficient to call upon it to remedy the defects and imperfections.

In the course of the charge the trial judge observed: " I charge you that in view of the facts and circumstances proved in this case, that it is not sufficient to charge the city with liability that the Baker street sewer was insufficient as an outlet, but you must further find that the city had notice prior to the alleged flooding in January of the plaintiff's premises, that this outlet was insufficient and inadequate to carry off the water." We think the charge was sufficiently favorable to the defendant. We think the evidence warranted the jury in finding in accordance with the instruction. Although in a subsequent sentence the judge remarked to the jury, viz., " I think you will have no difficulty in finding for the affirmative." We are of the opinion that he did not take the question from the jury; that he did no more than to express an opinion as to the evidence, leaving the jury at liberty to find in accordance with the testimony upon that subject. (*Gardner* v. *Picket*, 19 Wend., 186; *Althorf* v. *Wolfe*, 2 Hilton, 345; S. C., affirmed, 22 N. Y., 355.) In a subsequent portion of his charge he observes, viz.: " But, did the city have notice of this inadequacy of outlet? On that proposition you have the fact

that, at the time when this Sherman street sewer was put into the Baker street sewer, the city engineer examined the man-holes at that locality, and he discovered a certain amount of sediment around the inside of the wall of the man-hole, some two feet higher than the tile itself, indicating, as he says, that the water had risen above the tile, above the sewer, up into the man-hole, two feet above it. The city engineer was one of the defendant's officers. Notice to him was notice to the city. And it is for you to say whether or not that was sufficient evidence, or sufficient notice rather, to charge the city with negligence in preparing the proper outlet for this Sherman street sewer." And further on in his comments to the jury he said : " You have the fact that, prior to this January flooding, actual experience had demonstrated the fact that this outlet was insufficient because of the November flooding which has been testified to by the plaintiff, and of which the city had knowledge." We think the defendant obtained no exception to that branch of the charge which would warrant us in interfering with the verdict.

We think the city may not escape the consequence following the change of plans and reception of the waters of Camp ditch simply because it passed no resolution of its common council authorizing the change. The evidence indicates a direction by one of the aldermen of the city in its behalf at the time the departure was made from the plans and specifications prepared by the engineer and embraced in the contract. The city having approved of the construction of the sewer, as it did when it settled with the contractor, it is too late for it to say that the plans and specifications can shield it from liability. (*Stoddard* v. *Village of Saratoga Springs*, 127 N. Y., 261; *Nims* v. *City of Troy*, 59 id., 500.)

In the course of the charge upon the subject of damages the judge observed : " You have the fact that the plaintiff's wife was sick in bed; that he lost the value of her services. And you may include in your verdict such damages as you shall deem the proper compensation for the loss of her services, aside from the actual expenditures in the procuring of servants to take her place." Appellant's learned counsel claims that that portion of the charge, which we have just stated, was erroneous and he took an exception thereto in the following language : " I except to so much of your honor's charge as says that we are entitled to give the plaintiff damages for the loss of the ser-

vices of the wife incurred during her sickness." The language of the exception is obscure, indefinite, if not, unfortunate. If the evidence relating to that subject was indefinite, the plaintiff would be entitled to recover nominal damages ; second, the facts and circumstances ; the strength and health of the wife were before the jury and some evidence pertinent to the question of the value of domestic services and household services was before the jury. The case differs from *Leeds* v. *Metropolitan Gas-Light Company* (90 N. Y., 26), as in that case there were "no facts on which an estimate of such value could be founded" given, and it was said in that case that "if plaintiff fails to prove the value of the time lost, or facts on which an estimate of such value can be founded, only nominal damages for that item can be given." *Masterton* v. *The Village of Mount Vernon* (58 N. Y., 391), was an action to recover damages for the negligence of the defendant, and, in the course of the opinion, GROVER, J., said: "The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others. These are circumstances the jury have a right to consider in fixing the value of the time." At the close of the opinion in *People ex rel. Deverell* v. *M. M. P. Union* (118 N. Y., 109), it was said: "There was some evidence upon which to base their estimate and the question in this respect differed from that in *Leeds* v. *Metropolitan Gas-Light Company* (90 N. Y., 26)."

If a request had been made to the trial judge that in the absence of more full facts and circumstances the jury should only give nominal damages, probably the request would have been yielded to. We think the exception is not sufficient to warrant us in disturbing the verdict.

After the issue was joined, apparently, plaintiff applied for leave to serve a supplemental complaint, and, as no appeal is made from that order, we do not review the action of the court in respect thereto, nor as to the rulings at the trial receiving evidence thereunder. It was conceded at the trial that the complaint was amended in conformity to the order made in that regard.

We have looked at the other exceptions discussed in the brief of the learned counsel for the appellant and we are of the opinion that none of them require us to interfere with the verdict.

However, a majority of the court are of the opinion that there was error in respect to the damages awarded, and that the judgment ought to be modified by reducing the damages to $112.75.

The judgment and order must be reversed and a new trial ordered, with costs to abide the event, unless the plaintiff stipulates to modify the judgment by reducing the damages to $112.75, and, if such stipulation be given, the order and judgment, as modified, affirmed, without costs of the appeal to either party.

MARTIN, J.:

The plaintiff's claim for damages included an item for $180 for loss of services of his wife during her sickness, which was claimed to have been occasioned by the defendant's negligence.

The only evidence in relation to this item was that plaintiff's wife was sick and confined to her bed about two weeks; that up to that time she had been in the habit of doing her work for years, keeping no servant, and working some outside, and that a woman who was employed in the house during her sickness received seventy-five cents a day for her services, which were of that value.

In submitting the case the court, after referring to the other items of damage proved, which amounted in the aggregate to the sum of $144.75, instructed the jury as follows: "Aside from those, gentlemen, you have the fact that the plaintiff's wife was sick in bed; that he lost the value of her services. And you may include in your verdict such damages as you shall deem the proper compensation for the loss of her services, aside from the actual expenditures in the procuring of servants to take her place."

To this portion of the charge the defendant took the following exception: "Defendant's counsel — I except to so much of your honor's charge as says that we are entitled to give the plaintiff damages for the loss of the services of the wife incurred during her sickness."

Subsequently the defendant's counsel asked the court to charge "that the plaintiff is not entitled to recover any damages for loss of services of the wife on the ground that the plaintiff has failed to give any evidence showing what the damages were by reason of the loss of such service." The court declined so to charge, and the defendant excepted.

I think these exceptions fairly present the question of the sufficiency of the plaintiff's evidence to entitle him to recover for the loss of services of his wife during her sickness. It would be hypercritical to hold that the defendant's exception to the charge in this respect did not sufficiently raise the question of its correctness. It is true the appeal book shows that, in taking the exception, the defendant's counsel used the word "we" instead of "the jury." That it was plainly the intent and purpose of the defendant to except to the portion of the charge relating to this subject is manifest. I think a fair and reasonable construction of the exception shows the defendant's intent, and that the question was fairly raised. It was also presented by his request, the refusal of the court to charge as requested, and the exception taken thereto.

Thus the question is, whether the evidence was sufficient to justify the court in submitting to the determination of the jury the value of the services of the plaintiff's wife during her sickness, and to justify the court in instructing the jury that it might include in its verdict such damages as it deemed a proper compensation for the loss of her services, aside from the actual expenditures in procuring servants to take her place.

In *Leeds* v. *Metropolitan Gas-Light Company* (90 N. Y., 26) it was held that where loss of time is claimed as an item of damages from personal injury occasioned by negligence, if the plaintiff fails to prove the value of the time lost, or facts on which an estimate of such value can be founded, only nominal damages for that item can be given.

In *Staal* v. *The Grand Street and Newtown Railroad Company* (107 N. Y., 625) the correctness of the rule in the Leeds' case was recognized, and it was held that in an action to recover damages for personal injuries caused by the defendant's negligence, where no evidence was given as to the circumstances and conditions in life of the plaintiff, his earning power, skill and capacity, no damages for future pecuniary loss could be awarded.

In *Baker* v. *Manhattan Railroad Company* (118 N. Y., 537) the plaintiff was a music teacher, also a teacher in the public schools. There was evidence to the effect that she was unable to attend her school for six weeks; that she lost her salary as such teacher for that time; that the injury to her finger was of such a character as

to render it so sensitive that she could not strike the keys of a piano with it, and that, in giving music lessons, it was necessary for her to play in connection with her instructions ; but there was no evidence as to the amount of the salary paid her as a teacher in the public school, or as to the amount of her wages as a private teacher of music. In that case, it was said that she was entitled to recover only nominal damages for her loss of services as such teacher.

In *Wood* v. *City of Watertown* (58 Hun, 298) this court had occasion to examine a similar question, and it was there held that where loss of time is claimed as an item of damages for personal injury occasioned by negligence, if the party fails to prove the value of the time lost, or facts upon which an estimate of such value can be based, only nominal damages can be given. As was said in that case, " the doctrine of the Leeds case, so far as applicable to the case at bar, is in no way affected by the doctrine of the *People ex rel. Deverell* v. *M. M. P. Union* (118 N. Y., 101), as in the latter case there was evidence upon which to base an estimate of the damages. As was said by the learned judge who delivered the opinion in that case : ' The question, in this respect, differed from that in the Leeds case.' An examination of the appeal book, upon which the case in 118 New York was heard in the Court of Appeals, shows that the relator's evidence was to the effect that while he was a member of the respondent union his income was from twenty-five to thirty dollars per week, and that after he was expelled, it did not exceed five dollars a week. Therefore, in that case, there was evidence upon which a claim for damages could be based with some degree of certainty." The same principle was held in *Meagley* v. *Hoyt* (125 N. Y., 771.)

It seems to me that the question in the present case is plainly within the principle of the cases cited, and that the evidence was insufficient to justify the court in submitting to the jury the question of the value of the services of plaintiff's wife, or to authorize the court to instruct the jury that it might include in its verdict such damages as it should deem a proper compensation for the loss of her services. I find in the case no evidence whatever, as to the value of the services performed by her when in health, nor of the character or extent of the work performed by her in keeping the plaintiff's house.

Obviously, there were no facts established by the evidence upon which any fair estimate of the value of her services could be founded. The effect of the charge was to leave it to the jury to guess or speculate as to the value of the services which it was allowed to include as a part of the damages claimed to have been suffered by the plaintiff. I think the defendant's exception to this portion of the charge and its exception to the court's refusal to charge, as requested, were well taken, and that, as the case shows that this item formed no inconsiderable portion of the recovery, the judgment should be reversed. I think it no answer to this ruling to say that the plaintiff was entitled to recover at least nominal damages for loss of services of his wife, as the jury must have understood from the charge of the court that the plaintiff was entitled to recover substantial damages for such loss, for it awarded about $100 damages therefor, in addition to the full amount paid physicians, nurses and servants to take her place.

I concur in the opinion of the learned presiding justice, except as to the charge of the court as to damages for the plaintiff's loss of the services of his wife. For that error, I think, the judgment should be reversed or modified by reducing the amount of the plaintiff's recovery to the sum of $112.75.

MERWIN, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event, unless the plaintiff stipulates to modify the judgment by reducing the damages to $112.75, and, if such stipulation be given, the order and judgment, as modified, affirmed, without costs of the appeal to either party.