COLLETT v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. MUNICIPAL CORPORATIONS—PARKWAYS—FAILURE TO LIGHT—INJURIES—BICYCLE PATH.
    Where the entrance to a bicycle path on a parkway was so poorly lighted that one attempting to go thereon at night could not distinguish the boundaries of the path, and, deviating therefrom, was injured by an obstruction near the path, the city was liable for the injuries, where it was used by a large number of people at night, and the city, knowing such fact, took no precautions to warn the people of the danger.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    Where a bicyclist, in attempting at night to go from a street onto a bicycle path in a parkway, the entrance to which was poorly lighted, mistakes the boundaries of the entrance, and is injured by an obstruction, at what appears to be the entrance to the path, it cannot be said, as a matter of law, that he was not using reasonable diligence, where he had no reason to anticipate that any such obstacle would be in the highway, and the light was insufficient to enable him to detect the obstruction.

3. SAME.
    It is no defense to an action against a city for injuries sustained by reason of an obstruction in an entrance to a bicycle path in a parkway to show that the leaving of old curbing in the street, which constituted the

obstruction, was a part of the plan of construction adopted by the city, where it appears that the plan was one devised by the city engineer, and not known to, or adopted by, the city council.

4. SAME—FAULTY PLAN OF CONSTRUCTION.

Where a plan of construction adopted by a city for the construction of a highway results in the construction of a highway not perfectly safe for travel, the city is liable for injuries arising from dangers due solely to the faulty plan, where it does not use reasonable care to warn persons of the existence of the danger, so that they can avoid it.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Edwin Collett against the mayor, etc., of the city of New York for injuries. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

H. E. Lee, for appellant.
Theodore Connoly, for respondent.

RUMSEY, J. Down to the month of April, 1897, there existed on the west side of Riverside drive, in the city of New York, next to the bridle path, a foot path which had been separated from the bridle path by a narrow strip of grass and a line of curbing. At that time a bicycle path was laid out upon the easterly portion of the foot path, so that it lay between the bridle path and the remaining portion of the foot path. Shortly after it was constructed there were made opposite the place where 108th street entered the Riverside drive openings by which persons coming out of 108th street on their wheels could, by crossing the drive, enter the bicycle path. There were two of such openings, separated from each other by grass plots. Persons coming from 108th street were expected to enter the path by the righthand opening, which was about 30 feet wide. About 20 feet to the north of the opening was a grass plot, and extending from it to the south, towards the opening in the bicycle path, was a line of curbing about 20 feet in length, which had been left there when the opening was cut through. This line of curbing was a few inches in height, and was composed of bluestone of almost the same color as the stone of which the surrounding macadam road was built, so that in the evening it was difficult to distinguish it from the road. The only light in the neighborhood was a gasoline lamp in the center of the carriage way, and about 60 feet from the bicycle path. The light from this lamp was not sufficient to enable one riding his wheel at night to distinguish the curbing. The entrance to the bicycle path had been constructed for some weeks before May 16, 1897, and had from the time of its construction remained in the condition above described. On the night of the 16th of May, 1897, the plaintiff came out of 108th street on his wheel, and crossed Riverside drive, intending to enter the bicycle path. To do so he took, as he was required to do, the right-hand entrance. In addition to the light from the gasoline lamp above mentioned, he had upon his wheel a lamp which threw its rays from 15 to 20 feet, but the light from it was

not sufficient to enable him to distinguish the curbing from the surface of the roadway about it. He was riding slowly. When he came to the entrance, instead of going to the south of the curbing, he went so far to the north that he ran against it, and was thrown from his wheel, receiving serious injuries, to recover damages for which he brought this action. At the trial a verdict was ordered against him at the close of the evidence, and from the judgment so entered this appeal is taken.

While this curbing was outside of the line of the entrance to the bicycle path, yet the jury might have found from the evidence that that portion of the drive to which the path was intended to be confined was so dimly lighted that one approaching the entrance would not be able to distinguish the boundary line between it and the path, and could not see the curbing, and could not tell precisely where the entrance to the path was. It was in evidence, and not disputed, that during the time the curbing had been in that position a good many people had run into it, who were more or less injured, and that fact was known to the policeman in charge. It was also apparent from the evidence that the bicycle path was used by a very large number of people every night, and for that reason policemen were stationed there at night as well as during the day. The entrance was made for the use of those bicycle riders who had occasion to enter the path at that place. It is common knowledge that if one riding a wheel runs into an obstruction he is likely to be thrown from his wheel and injured. Since the path was intended for persons using that kind of vehicle, subject to those risks, it was the duty of the officers of the corporation to so construct it that it would be safe for such use. It is quite clear that the existence of this curbing, so close to the apparent entrance of the path, and so situated that one attempting to enter it could not tell whether the curbing was within the boundary of the path, constituted a defect; and it was therefore the duty of the officers of the defendant to use reasonable care to see that some notice or information of its existence was given to those using the entrance, so that they might avoid the danger. Ivory v. Town of Deer Park, 116 N. Y. 476, 22 N. E. 1080; Shear. & R. Neg. § 356. It cannot be said that the plaintiff, in attempting to enter the path, was not using reasonable diligence. He testifies that as he approached the light was not sufficient to enable him to detect the entrance, and become aware of the curbing. He had no reason to anticipate any such obstacle would be in the highway. Therefore whether or not he was guilty of negligence was a matter for the jury. The result is that, unless some defense is established by the evidence, the court erred in directing a verdict for the defendant.

The defense insisted upon is that this curbing was left where it was in pursuance of a plan adopted by the corporation when the bicycle path was laid out, and it is claimed that the act of the corporation in leaving the curbing in its position was a quasi judicial act, upon which negligence cannot be predicated. While it is the duty of every corporation which has occasion to lay out a highway or to open a street to use reasonable care to see that the street should be so laid out as to be reasonably safe for persons using it, the law

recognizes that under certain circumstances it may be necessary to so construct the street that it may not be perfectly safe for travel, and when that is the case, and the street is in such a condition that it is unsafe as a necessary result of the plan of its construction, the courts have held that the corporation is not liable for any injury to one passing which arises solely and purely because of the defect in the plan adopted. But it is quite manifest that such a rule, tending, as it does, to relieve a corporation very largely from the results of the carelessness or ignorance of its officers, and which tends to increase the danger to persons using the streets, is not to be extended to cases which are not clearly included within it. Kiernan v. City of New York, 14 App. Div. 156, 43 N. Y. Supp. 538. Before a corporation can claim exemption from liability for a defect in a highway because of a fault in the plan, it must be made to appear, not only that the work was done precisely in accordance with the plan, and that the injury resulted because of it, but that the plan was one adopted by the corporation (Clemence v. City of Auburn, 66 N. Y. 334); and it must also appear that, if the defect of the plan is such as to make the street dangerous, some steps have been taken, so far as possible, to remedy the defect, or to advise persons using the highway of the existence of the defect, so that they might protect themselves against it (Shear. & R. Neg. § 275, and cases cited; Munk v. City of Watertown, 67 Hun, 261, 22 N. Y. Supp. 227).

In this case it appears, from the testimony of the engineer who opened the entrance, that no plan was adopted by the authorities of the city. He testifies that after the bicycle path had been completed for some little time he was directed to open this entrance by the park commissioners, but he testifies that he received no directions as to how it was to be opened. He says that he found a basin head at the front to which this curbing extended, which he thought, if permitted to remain in the center of the entrance where he found it, would be an obstruction, making the entrance unsafe, and that, upon looking the ground over, he came to the conclusion, upon balancing the dangers of the basin head and the curbing, that the danger to be apprehended from the head was greater than the curbing. So it was a pure question of his judgment whether it was more dangerous to leave the basin head than to leave the curbing, and he decided and did leave the curbing. But it is evident that in so doing he did not pursue any plan given him by the city authorities, but that he acted on his own authority and judgment. It is clear, therefore, that this defect was not caused by carrying out a plan to which the engineer was directed to work.

This case is more like the case of Clemence v. City of Auburn, where the plan followed was one ordered by one of the common council, who saw fit to do so, and not the one adopted by the common council, and the court held that the plan suggested by the chairman of the council could not be said to be a plan adopted by the city, and for that reason the doctrine as to a quasi judicial proceeding did not apply.

But in this case the rule does not apply for another reason. It is not denied that this curbing extending into the bicycle path was a

dangerous obstruction. That fact not only appears by the testimony of the plaintiff, but is warranted by the testimony of the engineer who left it there. It was therefore an obstruction the danger of which was known to the proper authorities of the city, and it was their duty to see that reasonable care was used to warn persons of its existence, so that they might avoid it. Ivory v. Town of Deer Park, 116 N. Y. 476, 22 N. E. 1080; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095; Maxim v. Town of Champion, 50 Hun, 88, 4 N. Y. Supp. 515; Dill. Mun. Corp. (3d Ed.) § 1024; Storrs v. City of Utica, 17 N. Y. 105. It cannot be denied that such notice of the obstruction should have been given, that persons approaching the entrance might have avoided the danger.

The lamp which would have, under certain circumstances, shown this defect, was, because of the particular circumstances existing here, insufficient. But it is said that this was not a public highway, but a part of one of the parks of the city, and that it is not the duty of the park commissioners to see that it was kept lighted at night; and on that point is cited the case of O'Rourke v. City of New York, 17 App. Div. 349, 45 N. Y. Supp. 261. In that case it was held that it was not negligence for the park commissioners to fail to light a walk in a park for pedestrians, so as to advise them of steps down which it was necessary to go. But that case was put purely upon the ground that their duty was only to keep the walks reasonably safe; that the construction of the steps was not improper; that the walks were not expected to be used at night to the same extent that the streets were,—and that, as the walks were not to be so used, it was not the duty of the city to light them so that the attention of people would be called to irregularities of their surface; and that people walking in the parks at night have no right to assume that the surfaces are continuous, as they might do with reference to the walks of a street, and they have no right to walk along regardless of the fact that the walks are not continuous. But this case was entirely different. It appears affirmatively that this bicycle path was used by great numbers of people, not only in the daytime, but at night, and that fact must have been known to the authorities of the city. It was their duty, therefore, to see that the path so used was reasonably safe for the use for which it was intended; and, as it was intended for such vehicles that a slight obstruction would be a defect, it was their duty then to see that no such defect existed, or, if it did exist, to give such notice of its existence that one approaching might have an opportunity to avoid it. Although it is to be expected that more people would use the bicycle path in the daytime than in the night, yet it was not closed at night; and it is the duty of the park commissioners to see that every place to which people are admitted at night is reasonably safe, and, if they fail in that duty, the city is liable whether the accident occurs in the daytime or at night.

For these reasons the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and HATCH and PATTERSON, JJ., concur.

INGRAHAM, J. I do not concur in the reversal of this judgment. The accident happened on Riverside drive, a portion of Riverside park, under the exclusive control of the park commissioners. As a part of that park, there is a path for pedestrians, a bicycle path, and a roadway for carriages. These drives or paths through the park are not ordinary public highways, but are provided for the amusement and benefit of the people. When the park commissioners undertook to open this passageway from the roadway to the bicycle path, a question was presented to them as to the proper method of making the connection, and that question was left by the park commissioners to their engineer, who was instructed to make the proper alterations. The engineer testified, and it was not disputed, that, in consequence of the location of a basin head at this particular point, it would have been dangerous to remove all of the curbing which had before separated the bicycle path from the roadway, and that for the protection of those using this passage the existence of a portion of the curb in front of the basin head was necessary. In making that determination, he considered the surrounding conditions, and decided that it was for the public interest and the protection of those using this path that this basin head should be protected by the curb. He removed the curbing between the bicycle path and the roadway, leaving ample room for persons desiring to enter the bicycle path, and leaving only enough of the curbing to protect this basin head. But there is no dispute but that this situation, as thus created, was perfectly safe and proper in the daytime, or when there was sufficient light to see the curbing and distinguish it from the roadway. The plaintiff, however, attempted to use this road at night, and, failing to see the curb, he was injured. The accident was occasioned, not so much by the curb being in the position, as by an absence of sufficient light at that place so that persons using the road could see just where the passage to the bicycle path was clear. It would seem that there was no obligation of the city to maintain a light at this spot, or to make this parkway so light that persons using it would not run upon obstructions to the road. If the curbing had been removed, and the plaintiff had run upon this basin head, and was injured, he would have had just as much right to complain as he has now for running upon the curb. There is no dispute but that there was ample room for the plaintiff to proceed from the roadway to the bicycle path. He failed to see the curb, not because the curb was in the passageway, but because of the absence of sufficient light he was unable to distinguish the side of the passageway prepared for use. The negligence, if any, was not, it seems to me, in leaving the curbing, which, from the evidence, would appear to have been necessary to protect the basin head, but in failing to furnish sufficient light to enable one using the road to distinguish just where the proper entrance of the bicycle path was, and thus avoid running upon an obstacle placed outside of that entrance. If the plaintiff, in using the bicycle path, had run off on one side, and been injured, he certainly would not have been entitled to damages because of an absence of light which would have enabled him to see the side of the bicycle path; and it would seem to me that this was nothing more than such an accident, occasioned, not by any negligence of

the city, but because that at this particular point the plaintiff was not able to see the boundary of the passageway provided for those who wished to pass from the roadway to the bicycle path. It is not claimed that the city could be held liable for an absence of light at this particular point. If the city is to be liable for all accidents happening to those using bicycles in the streets or parks at night, because there is not sufficient light to enable them to see obstacles in their way, the liability of municipal corporations will be much extended. An entirely different rule, I apprehend, applies to parks of this description than to ordinary public highways, where a duty is imposed upon municipal corporations at all times to keep them in a safe and proper condition for public use. The utmost obligation upon municipal corporations maintaining such parks for the benefit of the public is to provide ordinarily safe walks and drives, and to keep them in proper condition. They provided here a perfectly safe passageway in the daytime. It was kept in good condition, and I can see no principle upon which the city could be liable because a person using it at night was unable to see an obstruction which the authorities having charge of that work determined was necessary for the proper protection of the public. It seems to me that this case is controlled by O'Rourke v. City of New York, 17 App. Div. 349, 45 N. Y. Supp. 261.

I think, therefore, that the judgment should be affirmed.