## SCOTT v. YONKERS R. CO.

(Supreme Court, Appellate Division, Second Department.   May 29, 1900.)

RAILROADS—ACTION FOR PERSONAL INJURIES—INSTRUCTIONS.

> Where plaintiff's only evidence as to the permanency of his injuries was that of his physician, that he was suffering from neuristhenia, from which a person could recover under certain treatment, the refusal to charge that there was no evidence of permanent injury is reversible error.

Appeal from trial term, Westchester county.

Action by Robert Scott against the Yonkers Railroad Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals.   Reversed.

Argued before GOODRICH, P. J.. and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

John F. Brennan, for appellant.
I. J. Beaudrias, for respondent.

GOODRICH, P. J.   The plaintiff was struck by a car of the defendant, and received injuries for which he recovered a verdict of $3,650.   The defendant alleges three grounds of error:   First, the refusal of the court to charge that there was no permanent injury; second, that the defendant was guilty of contributory negligence; and, third, that the verdict is excessive.   It is unnecessary to consider the question of contributory negligence, as we think the refusal of the court to charge that there was no evidence of permanent injury was reversible error.   The only evidence produced by the plaintiff on this subject was that of Dr. Bennett.   The accident occurred at Yonkers in June, 1898.   The plaintiff testified that after the accident he consulted Dr. Schopen, who examined and prescribed for him for several months.   Dr. Schopen died in September, 1898.   Dr. Bennett testified that the plaintiff called upon him about two months before the trial, which was in June, 1899, and that he found him "suffering from a condition of the nervous system which is known as 'neuristhenia.'"   The examination continued as follows:

Witness: "Neuristhenia is not necessarily fatal.   When I say 'not necessarily fatal,' I mean by that, a man may not die from it, but he may lead a miserable existence in consequence of it.   It would be very difficult to give a description of neuristhenia, because it is a condition where a man may present the appearance of absolutely perfect health, or he may have the appearance such as I have expressed.   The fact of a person slowly losing weight, while not working, would be one of the effects.   That might continue to progress until the person becomes so exhausted and nervous as to be unable to perform any work whatever.   Q. Would it be one of the probable results, that, a man suffering from neuristhenia, that the disease would develop so as to incapacitate him from doing any work?   A. Decidedly, yes.   In my opinion, Robert Scott is suffering from neuristhenia.   I should say that the evidences of the condition as found in his case would be very difficult to wipe out and be made to disappear.   The condition of every case is a law unto itself, and it would be difficult to state what would be the line of treatment in that case; but I should imagine, without going thoroughly into it, that— The condition of neuristhenia, in the average case, requires months of constant care and attention.   In many instances a man has to go away,—have a change of scene and climate.   *   *   *   Q. State what would be the proper treatment.   A. This man, if he wished to recover from it, and the only way he could recover from it,

would be to be placed in a sanitarium, or seek rest and change at the seaside, or in the mountains, or some such place, and have treatment that should be constitutional; a building up; a tonic course of treatment,—because it is the nerves that are affected."

This is the only evidence of the permanence of the plaintiff's injuries.

The court charged that:

"On the question of permanent injury, you must be satisfied from the burden of credible evidence in this case that any permanent injuries are such as would follow, in all probability, from the facts of this accident, and no other cause."

The defendant's counsel requested the court to charge "that there is no proof of permanent injury," which the court declined to do, save as already charged.

Dr. Bennett testified that he had been in practice for nine years,— eight of them in Yonkers,—and that he had had at least two or three thousand cases of neuristhenia, which, he guessed, were all in Yonkers. The air of that city, he said, was not conducive to neuristhenia. His testimony, if reliable, would indicate an appalling neurotic condition at Yonkers, which probably is not equaled in any part of the world. Passing the manifest absurdity of such testimony as bearing on his qualification by experience, and even assuming that he was an expert on the subject, his testimony fell far short of proof that the plaintiff's neuristhenia was of a permanent character, as his other testimony indicates that his patients do sometimes recover from the disease. Whatever may have been the impressions received by the learned justice in the haste of a jury trial, we find it difficult seriously to consider the testimony already quoted as credible or reliable evidence that the plaintiff's sickness is of a permanent character. There was no other evidence on the subject. We think, therefore, that the submission of the question to the jury was error so prejudicial to the defendant as to require a reversal of the judgment.

Judgment reversed, and new trial granted; costs to abide the event. All concur.