## CARTER v. VILLAGE OF NUNDA.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. DEFECTIVE SIDEWALKS—BLIND PERSONS—CONTRIBUTORY NEGLIGENCE.
   While no greater duty to keep sidewalks in a safe condition is owed to a blind person than to others, he, having no knowledge to the contrary, has a right to assume that a sidewalk in apparently safe condition is so in fact.

2. DAMAGES—PROFESSIONAL SERVICES—VALUE—EVIDENCE.
   Mere evidence of the number of visits of a physician is not enough to authorize a jury, in action for personal injuries, to pass on the value of the services.

3. SAME—PERMANENT INJURIES—EVIDENCE.
   Evidence merely that plaintiff is still suffering from the shock from a fall is not enough to authorize submission to the jury of the question whether the injuries are permanent.

Appeal from special term, Livingston county.

Action by George W. Carter against the village of Nunda. From a judgment for plaintiff, and from an order denying a motion for new trial on the minutes, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Fletcher C. Peck, for appellant.
John F. Connor, for respondent.

LAUGHLIN, J. The recovery in this case was for $1,000 damages sustained by plaintiff in consequence of injuries received by

falling on a defective crosswalk at the southeasterly corner of Church and Massachusetts streets, in the village of Nunda, on the 25th day of April, 1898, through the alleged negligence of defendant. At the outset, defendant's counsel challenges the sufficiency of the evidence to establish defendant's liability or plaintiff's freedom from contributory negligence. State street is the principal street of the village of Nunda, and it runs north and south. The next street easterly and parallel thereto is Church street. Massachusetts street runs easterly from State street, intersecting Church street at right angles. There is a sidewalk on the southerly side of Massachusetts street, and a crosswalk extending from it northerly across Massachusetts street, on the easterly line of Church street. Between the sidewalk and the crosswalk proper, and forming an approach thereto, was a plank from 10 to 14 inches in width, parallel with the sidewalk. Commencing at this plank, the crosswalk consisted of two flagstones, each about 4 feet in length, extending northerly, and a foot and a half in width, so placed as to leave a space of from 4 to 6 inches between them. For a long time prior to the accident there had been in this open space a piece of oak plank or timber, from 4 to 5 feet in length, 4 inches in width, and from 3 to 4 inches in thickness, which, for brevity, we will refer to as the short plank. Underneath the flagstones and plank there was a sluiceway, gutter, or ditch 10 or 12 inches deep, for water to pass through. The flagstones and short plank rested upon earth at either end, but no express evidence was given as to the extent of the earth support at the southerly end, or, in other words, as to how near this sluiceway, ditch, or gutter came to the sidewalk. There were many crosswalks in the village of similar construction. Plaintiff had long resided in the village of Nunda, was 52 years of age, weighed 253 pounds, and had been blind for 29 years. He had been accustomed to go upon the streets, both day and night, unattended, and he daily did the chores about his village house and barn, including the milking of a cow, and he frequently visited farms which he owned in that and Allegany county. At the time of meeting with the accident, about 9 o'clock in the evening, he was returning home accompanied by Mr. Pratt, whom he had been visiting at the latter's store on State street. They came along the southerly sidewalk of Massachusetts street, Mr. Pratt having hold of plaintiff's arm. When they reached a point opposite the crosswalk, Mr. Pratt turned plaintiff squarely around on the middle of the crosswalk facing north, the direction in which plaintiff resided, and then turned to the south to go to his own home. This witness says that there was an electric light at the corner; that, while he had no suspicions as to the safety of the crosswalk, yet, being conscious of plaintiff's inability to see, he examined it sufficiently so that, if the short plank had been out of place, he would have seen it; and that "to all appearances the crosswalk was all right." The further testimony of plaintiff, substantially corroborated by Mr. Pratt, is to the effect that the southerly end of the short plank slid down into the ditch or gutter as he stepped upon it, pitching him forward upon the ground, and forcing the other end so far for-

ward and up that the plank was entirely dislodged from its place, and came to a rest on the east side of the walk.

It appeared from the testimony of Mr. Fuller, who was street commissioner from October 20, 1897, until April, 1898, that in November, 1897, Mr. Cox, a trustee of the village, and one of the two members of the street committee having charge of the construction and repair of sidewalks, directed him to go and fix this plank, saying a complaint had been made that it was out of place; that he proceeded to do as directed; found the plank in the yard of premises adjacent, and replaced it over the gutter; that he then reported to Mr. Cox that he thought it a dangerous place, that somebody would get hurt there, and advised that he be permitted to take some bricks and pave them in at the northerly end of the plank, so that it could not slip; that this suggestion was not acted upon, and the plank was left as before; that subsequently, while still street commissioner, he found the plank out of place, and tucked under the sluice; that there was nothing at the north end to keep the plank from sliding out, excepting loose earth, and that when he put it back he stamped it down in the earth at that end. Testimony was also given by a bicycle rider that a short time before the accident to plaintiff he was riding his bicycle northerly over this crosswalk, and that as the wheel struck or came upon the southerly end of this plank the plank gave way, and sank down into the ditch, and that before thus giving way it appeared all right. Another bicycle rider testified to a similar experience within a month prior to the accident, and still another witness observed the plank out of place twice within a year. This evidence clearly justified the submission of defendant's negligence to the jury, and fully sustains the verdict in that regard.

It was also a question for the jury to decide as to whether plaintiff was guilty of contributory negligence. It cannot be held as matter of law that plaintiff, because of his blindness, was, in going upon the public streets and walks, deprived of the protection afforded to other citizens. Having no knowledge to the contrary, he had a right to assume that the streets and walks were in a safe condition for the passage of pedestrians. It is doubtless true that the village owed him no greater duty with respect to keeping its sidewalks in a safe condition for public travel than it owed to others in the full possession of their faculties. Plaintiff, however, in going about in public places alone, was called upon to exercise such reasonable care and caution for his own safety as an ordinarily prudent person with a like infirmity would have exercised. Whether he was negligent in attempting to go home alone on this occasion, or in the manner in which he attempted to pass over this crosswalk, was a question for the jury, and it was fairly submitted to them by a clear and accurate charge. Harris v. Uebelhoer, 75 N. Y. 169–175; Peach v. City of Utica, 10 Hun, 477; Davenport v. Ruckman, 37 N. Y. 568–573; Lortz v. Railroad Co., 7 App. Div. 515, 40 N. Y. Supp. 253.

It appeared that a physician attended plaintiff from the time of the accident until the trial, making 31 calls, besides several con-

sultations at his office. No evidence was offered as to the value of these services. The court, in the main charge, stated that there was no evidence as to what the physician's services were reasonably worth, but drew the attention of the jury to the number of visits made by the physician, and stated that the value of the services was a question for them to determine. No exception was taken to this charge. At the request of defendant's counsel, the court further instructed the jury that there was no evidence of the value of plaintiff's lost services, or of loss of earning capacity in the future, or of the value of the professional attendance. Defendant's counsel then requested the court to charge that there was no evidence upon which the jury "could base a finding of damages for the medical attendance of the physician." At this point plaintiff's counsel said:

"On that question I wish to make this comment before the court passes upon it, and that is that this jury are to be the judges, upon the facts before it, of the value of the plaintiff's services, as every person here, without putting any dollar and cent valuation upon the witnesses' lips; and they are to be the judges of the value of the medical attendance, there being. no dollar and cent valuation placed upon it."

Whereupon the court said:

"I am inclined to think that, if you are seeking to recover for services, you ought to have offered some evidence. I think the court of appeals has held, where you seek to recover for the value of a person's services who has been injured, you must prove that his services are of some value. I think, on the question of the physician's services, I will leave that to the jury."

Thereupon defendant's counsel duly excepted.

No further instructions were given or requested on this subject, excepting that immediately thereafter, at the request of defendant's counsel, the court charged the jury that they were "not competent to pass upon the services of a professional man, whether he is a physician or a lawyer."

Plaintiff sustained no external physical injuries, excepting bruises of a temporary nature, but he claims to have received a concussion of the brain, or shock, from which he continued to suffer pain in his head from time to time down to the trial. The attending physician was of opinion that plaintiff sustained a shock or concussion of the brain, but he would not hazard an opinion as to whether plaintiff "had or would fully recover." Defendant contends that the injuries were magnified, and that the verdict was large. The jury were twice instructed that they should determine and include in their verdict, if they found for plaintiff, the fair and reasonable value of the physician's services. There is no fixed and definite schedule of charges of which a jury may take judicial notice by which the value of professional services may be determined, and their value is not a matter of such common knowledge that jurors may be permitted to appraise the same unaided by other evidence, even though such evidence would be advisory, and not necessarily controlling upon their judgment. Scott v. Banks, 44 App. Div. 28, 60 N. Y. Supp. 397; Leeds v. Light Co., 90 N. Y. 26; Staal v. Railroad Co., 107 N. Y. 625, 13 N. E. 624; Saperstone v. Railway

Co., 25 App. Div. 285, 49 N. Y. Supp. 486; Kane v. Railway Co., 3 N. Y. St. Rep. 145; Houghkirk v. Canal Co., 92 N. Y. 219.

It is evident that the learned trial judge recognized the necessity of such proof when his attention was drawn thereto by the request to charge that the jury were "not competent to pass upon the services of a professional man, whether he is a physician or a lawyer." This was doubtless intended as a withdrawal of the former charge, but, being in the form of an abstract proposition of law, there can be no reasonable assurance that it was so understood by the jury. If, however, this were the only error, we might be justified in declining to reverse on the ground that defendant's counsel should have further specifically requested the court to limit the recovery for medical attendance to nominal damages. Feeney v. Railroad Co., 116 N. Y. 375–381, 22 N. E. 402, 5 L. R. A. 544; Munk v. City of Watertown, 67 Hun, 261, 22 N. Y. Supp. 227; Seitz v. Railroad Co. (Com. Pl.) 10 N. Y. Supp. 1. But, without further evidence than that plaintiff was still suffering from this shock, the court left it to the jury to find whether the injuries were permanent, and to award him damages for future suffering upon that basis if they so found, and to this charge defendant's counsel duly excepted. The nature of the injuries from which he claimed to be suffering was such that there should have been further evidence to warrant a finding that they were permanent. Scott v. Railroad Co., 51 App. Div. 626, 64 N. Y. Supp. 817; Noonan v. Brewing Co., 50 App. Div. 377, 63 N. Y. Supp. 1066; Streng v. Brewing Co., 50 App. Div. 542, 64 N. Y. Supp. 34; McAllister v. Ferguson, 50 App. Div. 529, 64 N. Y. Supp. 197; Laidlaw v. Sage, 158 N. Y. 73–97, 52 N. E. 679, 44 L. R. A. 216. Deeming it probable that the jury were misled by the charge upon the question of damages (Scott v. Banks, supra; Klein v. Railroad Co., 54 N. Y. Super. Ct. 164; Pickett v. Town of West Monroe, 47 App. Div. 629, 63 N. Y. Supp. 30), we are constrained to hold that the exceptions to which we have alluded require a reversal.

Judgment and order appealed from reversed, and new trial granted, with costs to appellant to abide the event. All concur, WILLIAMS, J., in result.