(156 App. Div. 440.)

## BERGER v. VILLAGE OF SOLVAY.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1913.)

1. MUNICIPAL CORPORATIONS (§ 724*)—STREETS—INJURIES—DEFENSES.
    As a rule a municipality is not liable for damage or injuries resulting from the exercise of a governmental function by it.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 623–625; Dec. Dig. § 724.*]

2. MUNICIPAL CORPORATIONS (§ 796*)—STREETS—NEGLIGENCE.
    While village authorities may select the location for a hydrant in a street anywhere they see fit, yet where the place selected made the use of the street inherently dangerous, it was their duty to safeguard travelers from injury therefrom by lights or barriers, etc.; and the village is liable for injuries resulting from the failure to do so by collision with the hydrant.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1655; Dec. Dig. § 796.*]

3. MUNICIPAL CORPORATIONS (§ 819*) — INJURIES — NEGLIGENCE—SUFFICIENCY OF EVIDENCE.
    Evidence, in an action against a village for personal injuries by running into a hydrant placed in the footway by the village authorities, held to sustain a finding of negligence in placing and leaving the hydrant there without giving warning to pedestrians.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

4. MUNICIPAL CORPORATIONS (§ 796*)—STREETS—NEGLIGENCE.
    Where a hydrant was moved into a cinder path, used as a sidewalk, as an incident to the improvement of the sidewalk by constructing a concrete walk, but the improvement planned was permitted by the village authorities to be unfinished for months, without guarding the hydrant or warning pedestrians, it was liable for injuries to a pedestrian by running into it at night.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1655; Dec. Dig. § 796.*]

Appeal from Onondaga County Court.

Action by Fred Berger against the Village of Solvay. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Lamont Stilwell, of Syracuse, for appellant.

John P. Hennessey, of Syracuse, for respondent.

LAMBERT, J. This action sounds in negligence, and grows out of the following facts: Plaintiff resides upon the easterly side of Charles avenue in the village of Solvay. Several years prior to the accident complained of, there had been constructed along that side of such street a board walk. As this walk fell into disrepair, it was replaced with cinders and ashes, which formed a pathway, three or four feet wide, somewhat irregular in alignment. About two years prior to the accident, the village adopted a comprehensive plan for the improvement of the sidewalks of the village, including this particular walk. It was designed to replace these cinders with a concrete walk, located somewhat further towards the center of the street. As a preliminary to such concrete construction, a hydrant, located in the street and northerly from plaintiff's premises, was moved some two or three feet nearer the street line and into the cinder pathway above described. Pending the construction of the cement walk, cinders were filled in, by the village, both sides of the hydrant, so that there was passage room for pedestrians on either side thereof. The walk was left in this condition until the happening of the accident, a period of about 18 months.

At about 8:30 o'clock in the evening of November 7, 1910, plaintiff had occasion to leave his premises hurriedly. In hastening along Charles avenue, he came into collision with this hydrant and received the injuries for which he has had a recovery. There had been a slight fall of snow, and the locality of this hydrant was unlighted. The issue of contributory negligence was clearly for the jury. It is as to defendant's negligence that serious question arises.

[1] This hydrant was a part of the general water system of the village, and it satisfactorily appears that its location was the result of the determination of the proper authorities. It is urged that the selection of the location for this hydrant was a feature of the general plan for the water system, and that in making such selection the authorities acted in a semijudicial capacity, and that hence the municipality is not liable for any error in judgment in such selection. The defense of "governmental function" is well recognized in this state. Wilcox v. City of Rochester, 190 N. Y. 137, 82 N. E. 1119, 17 L. R. A. (N. S.) 741, 13 Ann. Cas. 759. And, in general, a municipality cannot be held responsible for the consequences of the exercise of such a function. It must be conceded that the selection of a location for this hydrant had to be vested somewhere, and that our form of government vested it in the authorities of this village. It is equally true that the advantageous distribution of water to the community, and proper protection from fires, requires such hydrants to be located somewhere within the confines of the street. The authority to select this particular location undoubtedly existed in the municipal authorities, and no one could compel the removal of the hydrant to another location.

[2, 3] But, while that power did exist, there was likewise certain duties imposed upon this municipality. Streets are not alone for the location of hydrants, and, in fact, that is not their primary use. They are for the use of individuals in passing from one locality to another for their business or pleasure. The active duty devolved upon these same authorities to keep this street in a reasonably safe condition for travel. While the power existed to so locate this hydrant as they saw fit, yet that did not lessen their duty to the traveling public or to the plaintiff. If, in the exercise of such power they selected a location which made the use of the street inherently dangerous, then their plain duty arose to safeguard travelers from injury in so using it. This end might be accomplished, by lights or barriers; but, in the absence of all warning, the village cannot escape the consequence of its neglect of a positive duty, by merely asserting an unquestioned right to place the obstruction within the line of travel. The mere right cannot override the plain and positive duty.

In Collett v. Mayor, etc., of New York, 51 App. Div. 394, at page 398, 64 N. Y. Supp. 693, at page 696, the court recognize the justness of this conclusion when they say:

"And it must also appear that, if the defect of the plan is such as to make the street dangerous, some steps have been taken, so far as possible, to remedy the defect, or to advise persons using the highway of the existence of the defect, so as they might protect themselves against it."

Such I understand to be the rule applicable to cases similar to this, wherein the defense of "governmental function" is involved. A clear question of fact was presented in this particular, and the verdict should not be disturbed.

[4] There is another view, which seems to me to be conclusive against appellant. The moving of this hydrant was a mere incident to the improvement of the sidewalk. This improvement plan was allowed to lie in an incomplete and unfinished condition for months. During such interval the injury was occasioned, and was so caused solely by reason of the unguarded and unfinished manner in which the work was left. I can see no distinction in principle between such facts and those involving injury through the leaving of unguarded trenches or barriers in connection with incomplete improvements. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442; Storrs v. City of Utica, 17 N. Y. 105, 72 Am. Dec. 437.

The judgment and order appealed from should be affirmed, with costs. All concur.