THE CITY OF SAINT PAUL, Plaintiff in Error, *vs.* LOUIS SEITZ, Defendant in Error.

It is the peculiar province of City Authorities to determine at what time the necessities of the City require, or its finances, or the property to be charged, will justify, the improvement of streets. And the work may be partial, or complete in its character, as in opening the way to pedestrians only, or to general travel. But when the city undertakes the improvement of a street, by grading or otherwise, the authorities are bound to take care that what they cause to be done shall not endanger the safety of the public. The city is in all cases responsible for such dangers as are incident to, and consequent upon the nature of the work itself; while its liability in those dangers which result from an improper execution of the work, may be limited by the terms of the contract under which it is performed.

In cases where there is a duty resting upon the City to keep a street in safe condition, the city is liable for accidents arising from a failure on its part to repair damages, or remove obstructions occasioned by natural causes over which it had no control, and in which it had no agency : but where no such duty exists, no such liability would arise, but to charge the corporation it must have been in some way instrumental in occasioning the injury.

Where the work is done under a contract with the city authorities, which gives the entire charge and control thereof to the contractor, and a cause of action arises from his negligence, or that of his servants, in the manner of performing the work, the contractor is the *ultimate superior*, and is alone liable, and the corporation is guilty of no 'fault; but where the contract reserves to the City a supervisory and directory power over the work, and the manner of its performance, the contractor and his employees are thereby made the agents and servants of the City, and in case of accident resulting from their negligence or carelessness in performing the work, the principle of *respondeat superior* applies.

WRIT OF ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The following is a statement of the case :

This was an action brought in the Court below by Louis Seitz, against the City of Saint Paul, in the nature of an ACTION ON THE CASE, for damages alleged to have been suffered by him through the NEGLIGENCE of certain alleged servants or agents of said City.

The case was referred to W. Wilkin, Esq., to report SPECIALLY upon the facts, in the nature of a special verdict.

The Referee found—

That Fourth Street, between Jackson and Rosabel, (LOCUS IN QUO,) had been "dedicated to the public uses as a street by the owners," (in 1849,) by filing a plat, &c.

That the Street Commissioners · ordered the street to be graded on the 22d of August, 1856, and that the work was contracted for with Nash, as before stated, and had not been used as a street prior to grading.

38

The Referee then goes on to describe the natural condition of the ground at the time of the commencement of the grade, to wit:

That between Jackson and Sibley streets there was a deep ravine or cavity, 30 feet deep; that from Sibley street to Rosabel, the ground ascended and formed a hill or bluff, being quite precipitous about Sibley street, and thence sloping towards Rosabel street and the river.

The Referee reports further that Nash commenced grading in the Fall of 1856, first by filling up the ravine, and at the same time excavating from Sibley street towards Rosabel into the hill, and continued the work to April, 1857, when it was suspended for two or three weeks; it was then resumed, and the excavation commenced from Rosabel towards Sibley; in making the latter excavation, the pit or hole was dug wherein the Plaintiff below, Seitz, is alleged to have fallen; that the excavation had not been carried to grade; that no guards were set, or other means employed to protect the same from danger; and that Seitz fell into the same while passing along in the night time, and suffered damage thereby to the amount of $800.

Section 3 of Chapter 7, Sec. 1, of the City Charter, (then in force,) provides, "The said Street Commissioners shall have power to order and contract for the making, grading, repairing and cleansing of streets, alleys, public grounds, reservoirs, gutters and sewers within their respective wards, and to direct and control the persons employed therein."

Upon the filing of the report, the Counsel for Seitz moved the Court for judgment, which motion was opposed by the Counsel for the City of Saint Paul; the Court granted the motion and rendered judgment in favor of Seitz, and against the City of Saint Paul, for the amount reported by the Referee, as appears by the record.

Points and assignment of errors, on behalf of Plaintiff in Error:

1. Because the facts found by the Referee were not sufficient to constitute a cause of action.

2.  Because it appeared that the said grading was under the exclusive jurisdiction of the Street Commissioners of the First Ward of said City.

3.  Because it appeared that at the time of the occurence complained of, the City of Saint Paul and municipal authorities were not obligated to keep the street in good condition and repair.

4.  Because it appeared that the excavation which occasioned the accident, was not made by the City, or any of the municipal authorities, or by the agents or servants of the same, and because it appeared that the City of Saint Paul was in no way privy to the acts or omissions complained of by the Defendant in Error. *State vs. Trask*, 6 *Verm.*, 355 ; *City of Cin. vs. White*, 6 *Peters*, 431 ; *Blake vs. Ferris*, 1 *Selden*, 54 ; *Pack vs. Mayor of New York*, 4 *Selden*, 222.

The following are the points and authorities relied upon by the Counsel for the Defendant in Error :

The Plaintiff in Error is liable in this action upon either of two propositions :

1.  That the persons engaged in grading are to be regarded, as to third parties, as the agents or servants of Plaintiff—

2.  The Plaintiff having caused the grading to be done, it was its duty to have it done in such manner as not to injure others.

To the first proposition—

*First*—The act of the street commissioner and comptroller in ordering and contracting for the grading was the act of Plaintiff.

1.  The street commissioners of the several wards are not separate corporations, but a branch or department of the corporation of the city, established for the performing of certain of the powers and duties of said corporation.

2   The limiting their powers to certain localities does not alter their character any more than does the limiting such powers to certain subject matters.  No officer exercises all the powers of the corporation; not even the common council, the legislative department.

3. But the officers of the several departments, including that having charge of the streets, are under the general supervision of the council. *See Laws of* 1854, *page* 14, *Sec.* 2 ; *page* 18, *Secs.* 5, 6, 7 *and* 8 ; *page* 20, *Secs.* 20, 21, 22 ; *page* 24, *Sec.* 6 ; *page* 29, *Secs.* 1 *and* 2.

4. The commissioners are also to a certain extent under the supervision of the comptroller, a general officer of the city, appointed by the common council. *Laws of* 1854, *page* 20, *Secs.* 17, 19, 20 *and* 21.

5. It is the character and nature of the act, and not to what officer its performance is assigned, that determines whether it be a corporate act. If it comes within the objects and purposes for which the corporation was created, it is a corporate act.

6. The opening, laying out and repairing of streets are among the chief purposes for which city corporations are created. That the Legislature intended these as corporate powers and duties, see, in addition to the sections already cited, *Secs.* 13, 14, 15, *page* 41, *Laws of* 1854.

7. That the city at large does not pay for the grading does not affect the case. The question is not who was to pay for it, but who caused it to be done. Neither does the fact that the work must be let to the lowest bidder. The statute controls only as to the manner of fixing the price, and the person to whom the work shall be let, and leaves the commissioners with full power and right to control the persons to whom the work is let, as to the manner of conducting it. *New R. S., p.* 616, § 15.

*Second.*—The Plaintiff having done the work by its contractor, is liable for the negligence of those actually performing it under the contract.

1. When one procures work to be done on his own property, and for his own benefit, the persons doing it, whether paid by the day, or a stated sum for the whole work, are, so far as third parties are concerned, to be regarded in law as his servants or agents. *See American Leading Cases,* 620 *and* 621 ; *Delmonico vs. Mayor, &c., of New York,* 1 *Sand.* (*S. C.*) 222 ; *Bush vs. Steinman,* 1 *Bos. and Pull.* 404 *and* 409 ; *Lowell vs. Boston & Lowell R. R. Co.,* 23 *Pick.* 31,

2. The general rule is, that one who causes an act to be done, is liable for the negligence of the person doing it, on the intendment of law that he had control over the person doing it.

3. The exception is in cases where the person actually doing the act is exercising an *independent employment*, so that he is not under the control of his principal. The difficulty is in determining what shall be considered an *independent employment*.

4. The cases in 1 *and* 4 *Selden* hold in effect that the employment may be made independent by contract between employer and employee. Considerations of public policy should prevent this becoming the rule—for in such case the employee might be made independent by the contract with his employer in every case of employment.

5. The doctrine founded on the soundest reason and best public policy, is that the exceptions extend only to cases where from some provision of law, or from the nature and character of the business, the employee is *necessarily* independent of the control of his employer as to the manner of doing it.

6. Because it is the fault of the employer, if he do not in his contract reserve sufficient right of control over the conduct of his employee.

*Third.*—The stipulation in the contract that "the work of grading shall be done under the direction of the commissioners," reserves to them sufficient right to control the conduct of the persons engaged in it. This stipulation does not (as did the one in 4 *Selden*) refer to the *results* of the work, or as to how it shall be when completed, for as to that the contract expressly provides, without providing for any change in the specifications. The control of the conduct of the persons engaged in the work being reserved, they are, within the reasoning of all the cases, regarded as servants of the Plaintiff. *Laws of* 1854, *p.* 29, § 3.

To the second proposition—

*First.*—The city is to be regarded as the owner of land upon which the street is laid out; it is held by the city to and for the use of the public as a street. *See Revised Statutes, Chap.* 31, *Secs.* 4, 5 *and* 7.

1. The city had the exclusive control of it as a street, and was in the position of a private person owning real estate.

2. If a private person cause an act lawful in itself to be done on his real estate, he is bound to have it done in such a manner as will not unnecessarily cause injury to others. *American Leading Cases*, 620 *and* 621; *Bush vs. Steinman*, 4 *Bos. & Bull.* 404 *and* 409; *Fenton vs. Dublin Steam Packet Co.*, 8 *Adol. & Ellis*, 835.

3. Municipal corporations are bound by the same duty. See *Baily vs. Mayor, &c., of New York*, 2 *Denio*, 443; *Rhodes vs. City of Cleveland*, 10 *Ohio*, 159; *McCorab vs. Akron* 15 *Ohio*, 475.

4. Therefore, whether the relation of master and servant existed between the Plaintiff in Error and the persons engaged in grading or not, as the Plaintiff had a right to order the grading done, and did so order, and as it had the control of the street, it was its duty to cause it to be done in such a manner that others should not unnecessarily be injured, and it is liable for a neglect of that duty.

The judgment should, therefore, be affirmed.

HENRY J. HORN, Counsel for Plaintiff in Error.

J. & C. D. GILFILLAN, Counsel for Defendant in Error.

*By the Court*—FLANDRAU, J. Although the Charter of the City of St. Paul assigned to the aldermen of each ward therein the duties and powers of Street Commissioners for their several wards, and authorizes them to contract for the "making, grading, repairing and cleansing of streets, alleys, public grounds, reservoirs, gutters and sewers within their respective wards," still their acts and contracts, in respect to such duties, are none the less the acts and contracts of the City, than if done and made by the Common Council thereof. They cannot consummate a contract without the countersignature of the City Comptroller, nor can they perform any act that is not subject to review by the Common Council of the City, upon the appeal of any party aggrieved. The effect of these provisions of the charter is simply to distribute the exercise of the powers and

duties of the corporation concerning its streets, &c., among certain of its local officials, giving them the power in their particular localities or districts, to originate and prosecute such improvements or changes as they may deem proper, reserving to the City at large through its Common Council a supervision and control over all their proceedings by means of appeal.

One of the principal objects and purposes of a municipal corporation is to furnish those additional and increased facilities of travel to its inhabitants in the way of safe and commodious streets and thoroughfares, which, are made necessary by the presence of a dense and aggregated population; and although in repairing and improving streets already in use, or in projecting new ones to meet the growing requirements of a city, it is generally just and desirable that the locality or division to be immediately benefitted, should shape and influence the work, and bear the expense, yet as every part of a city is more or less interested in the condition of every other part, it is quite as important that there should be a central power to check excesses and abuses arising from local or other causes, prejudice or passion, and ensure that uniformity so essential to beauty and utility.

We will not undertake to say whether the Legislature could or could not create several distinct political bodies within the limits of one city, each independent of the other, and of the aggregated whole, concerning its streets or other internal matters; but we are so impressed with the complicated difficulties which would arise, and the disastrous consequences which would ensue to a city and its inhabitants from such a condition of things, that the Legislature would have to manifest such an intention in the most unmistakable terms before we would give such an effect to its enactments.

There is a positive duty resting upon a municipal corporation to keep its streets in such a condition as not to endanger the safety of travelers. This, however, must be taken with some qualification. It does not follow that because private individuals lay out their lands lying within the limits of an incorporated city into lots and streets, that a duty at once attaches to the corporation to put such streets in order and render them safe

for the passage of travelers. Such a rule would place the city very much at the mercy of individuals, in respect to its improvements and expenses, and cannot be admitted. We do not think such is the law. The act of dedication by the individual would confer upon the public the undoubted right to use the street for the purposes of travel; yet if the natural formation of the land rendered it dangerous of passage, it cannot be said to be the fault of the city corporation, either in its origin or its continuance, and travelers who frequent such dangerous localities must exercise sufficient care and prudence in passing them to insure their safety.

It is the peculiar province of the city authorities to determine at what time the necessities of the city require, or its finances or the property to be charged will justify, the improvement of streets: and when they decide to act, the work may be one of a partial or complete character, as in opening the way to pedestrians alone, or to general travel; but in any event, when the city undertakes the improvement of a street, whether by grading or otherwise, they are bound to take care that what they cause to be done, shall not endanger the safety of the public. And here we wish to be clearly understood in making the distinction between such dangers as are incident to, and consequent upon the nature of the work itself, and those which result from an improper execution of it: the former of which the city is in all cases responsible for, while its liability in the latter may be limited by the terms of the contract under which the work is performed. For greater certainty in the statement of this distinction, we will illustrate by reference to two cases recently adjudicated in the Court of Appeals in the State of New York, in one of which a city corporation was held responsible for an injury sustained in consequence of a street improvement, and in the other the corporation was acquitted from liability.

In *Storrs vs. The City of Utica*, 17 *New York Reports*, 104, the city decided to make a sewer in Genessee street in that city, and let the work out by contract to one Shippey. The contractor allowed the ditch to remain open and unguarded in the night time, and the Plaintiff drove a wagon into it and was

injured.   The city was sued, and the defence was the same as made here,—that the work was done by contract, and the contractor was the superior who was alone liable.   There was no stipulation in the contract that guards or lights should be placed about the ditch for the protection of the public.

Now, it will be seen that the very subject of the contract in this case was to make a sewer in the street, which involved the digging of a trench or ditch; this, in fact, was what the contractor agreed among other things to do; therefore, the work, although performed in strict conformity to the terms of the contract, and in every way properly and correctly, was in itself dangerous to the traveling public if not properly guarded. The contractor committed no fault; he performed on his part all he had undertaken, as in *The City of Buffalo vs. Holloway*, 3 *Seld.* 493, it was expressly held that there was no duty imposed upon him by his contract to take measures to prevent people from falling into the ditch while in progress of construction.

The principle under which the City of Utica was held responsible for the injury in this case, is clearly expressed in the following extract which we make from the opinion of the Court as delivered by Justice COMSTOCK.   He says, at page 108 : "The cause of the accident, therefore, was not in the manner in which the work was carried on by the laborers; if it had been, their immediate employer, and he only, was liable for the injury.   But in a sense strictly logical, as it seems to me, the accident was the result of the work itself, however skillfully performed.   A ditch cannot be dug in a public street and left open and unguarded at night without imminent danger of such casualties.   If they occur, who is the author of the mischief? Is it not he who causes the ditch to be dug, whether he does it with his own hands, employs laborers, or lets it out by contract ?   If by contract, then I admit that the contractor must respond to third parties, if his servants or laborers are negligent in the immediate execution of the work.   But the ultimate superior or proprietor first determines that the excavation shall be made, and then selects his own contractor."   (Our case differs in this point, but the difference does not affect at all the

principle under consideration.) " Can he escape responsibility for putting a public street in a condition dangerous for travel at night, by interposing the contract which he himself has made for the very thing which creates the danger? I should answer this question in the negative. He may insert in the agreement a clause that the contractor shall provide lights or guards, but I do not see how even that can change the principle. The contractor in that case would be liable to indemnify his employer for accidents occasioned by the neglect of the stipulation, and, perhaps, also be liable directly to persons injured. He might even be liable to the latter for leaving the ditch unguarded at night, without any stipulation on his part. But granting all this, it has no tendency to shield the ultimate superior or author of the work from responsibility."

Now, had the injury to the Plaintiff in the above case arisen from some negligence on the part of the contractor *in the manner of digging the ditch*, as by a negligent or careless blast of rock; then the city would have been exonerated from liability, because the contractor alone had control of this department of the work, and the doctrine of *respondeat superior*, by which such cases must be determined, would alone reach him; the principle of corporate duties not being applicable.

In the case of *Peck vs. the Mayor, Aldermen, &c. of the City of New York*, 4 *Seld.* 222, the city made a contract with one Foster to furnish all the materials and regulate a street in the City of New York. Foster sub-let to one Riley all the blasting of rocks on the job. Riley, in carelessly and negligently conducting a blast, injured the wife, and killed one of the children of the Plaintiff. The suit was prosecuted against the City, and the Court held that the Defendant was not liable, because the contract under which the work was done, made the contractor independent of the City as to the manner of its execution: or, in other words, the doctrine of *respondeat superior* did not apply to the City, the contractor not being the servant or agent of the corporation. In the language of the Court, "If the injured party attempts to recover for his loss against any other than him who is guilty of the wrongful act, it can only be on the ground that the relation of principal and

agent, or master and servant, exists between the party sued and the party doing the act.   The contract made between the Defendants and Foster to do the job of work in question, according to the doctrine of *Blake vs. Ferris*, and the cases which that is supposed to have followed, does not constitute the *contractor* the agent or servant of the Defendant, the employer."

These two cases clearly define the distinction which we wish to present, between causes of action which arise from the negligence of contractors in the manner of performing such work, which makes them alone liable; and causes of action which arise *by reason of the very subject of the contract*, when there is no question about the manner in which it is executed, in which the corporation is liable.   In the first case the corporation is guilty of no fault; in the last by causing an obstruction to be placed in the street, and thereby rendering its passage unsafe, it is derelict in duty in not surrounding it with the necessary safeguards.

Keeping this distinction in view, we will endeavor to make an application of the principles we have been discussing, to the facts of the case at bar.   We are cited by the Defendant to the cases of *Blake vs. Ferris*, 1 *Seld.*, 48, *and Peck vs. the Mayor, Aldermen, &c., of the City of New York*, 4 *Seld.*, 222, above commented upon, to sustain the theory of the defence.   The first contains an excellent discussion of the doctrine of *respondeat superior*, and the last, correctly applies the principles so discussed, to the facts of that case.   We do not conflict with either of them in the result we arrive at, but adopt the reasoning of both.

It may be said that the liability of the corporation in *Storrs vs. the City of Utica*, arose from the prior duty which was obligatory upon the City to keep Genessee street in *good condition*, and as no such duty devolved upon the City of Saint Paul, in regard to Fourth street, the *locus in quo*, prior to the commencement of this work, that the case fails in applicability.   Conceeding that the City was not obliged to keep Fourth street in good order and repair, does it follow that it had any right to "dig a pit or hole several feet deep and ex-

tending across said Fourth street" either by its own servants, or cause it to be done by contract, and leave the same unguarded and unprotected? The corporation may not have been responsible for the dangers to which travelers were exposed from the natural irregularities and imperfections in the street, but it seems to me that it is quite illogical to conclude from this premise, that it enjoyed the same immunity as to injuries caused by dangers of its own creation. If the grading of the street involved the digging of this "pit or hole," into which the Plaintiff fell, and the Referee reports that it was dug "under and pursuant to said contract," then the City was placing a dangerous obstruction in the street which did not previously exist, and it was bound to see that no one was injured by its acts. We think in all such cases, corporations are responsible under the principles of the case of *Storrs vs. the City of Utica*, and that where a prior duty exists to keep the street in safe condition, it cannot divest itself of its obligation in this respect, by contracting to have the danger guarded; whether it could or not in a case like the one at bar, is less certain.

The distinction between cases in which there is a duty resting upon a city to keep a street in safe condition, and cases like the one at bar, where no such duty exists, is this—that in the former the city is liable for accidents arising from a failure on its part to repair damages, or remove obstructions occasioned by natural causes over which it had no control, and in which it had no agency, such as the washing of a street by excessive rains, and similar occurrences, while in the latter no such liability would arise, but to charge the corporation, it must have been in some way instrumental in occasioning the injury.

But let us examine the case under the principle of *respondeat superior*, and see whether the stipulations of the contract under which the work was done, do not establish the relation of master and servant between the city, and Nash and his employees. The charter provides, Sec. 3, "The said Street Commissioners shall have power to order and contract for the making, grading, repairing and cleansing of streets, alleys,

public ground, reservoirs, gutters and sewers within their respective wards, *and to direct and control the persons employed therein.*"

Their power to make a contract at all rests upon this section, and the statute evidently designs that they shall retain that supervisory and directory power over the details of the work and the manner of its performance which is so valuable to the citizen in protecting his person and property against the carelessness of irresponsible contractors. The Commissioners and Nash seem in this contract to have had the same views of their powers and duties which we entertain. They have stipulated as to the style and extent of the work, the time of its completion, and the amount and manner of the compensation, all of which matters are addressed to the *results* of the contract, and bind both the parties, beyond the control of either. Such for instance is the effect of the stipulation that "the whole street when completed to arise in the centre thereof eighteen inches." This is beyond the control of either party without the consent of the other. The city could not demand that the centre should be elevated twenty inches; nor could Nash insist that sixteen was sufficient. But they have also inserted this stipulation, "*The work to be under the direction of the Street Commissioners.*" What work? They have specially provided for the character, appearance and extent of the work when completed, and we have seen that in these matters the Commissioners have no right to interfere. What then is this stipulation to operate upon? Evidently the manner of the performance of the work already contracted for. For instance, if blasting is necessary, they may insist that each blast shall be so smothered as to prevent injury accruing to adjacent property, or persons passing. If excavations are to be made in the vicinity of houses, they may insist that the necessary steps shall be taken to prevent them being undermined.

Certain parts of the contract are, by the nature of the law under which it is made, taken from the control of the city officials. Yet the feature upon which the relation of master and servant chiefly depends, is required by the law to be

inserted in the contract, and in this instance was obeyed. The city therefore made the employees of Nash its own servants in the performance of this work, and stand responsible for injuries arising from a negligent execution of it as the *ultimate superior*. If, therefore, the casualty occurred in consequence of the fault of the workmen employed, the liability is chargeable back upon the city upon the principle, "*qui facit per alium facit per se.*"

The clause in the contract under which the work was done in *Peck vs. The Mayor of New York*, was that Foster, the contractor, should "conform the work to such *further* directions as should be given by the Street Commissioners, and one of the City Surveyors," and an effort was made to fix a liability upon the city by reason of it; but the Court very properly held that it did not constitute Foster the immediate agent or servant of the Defendant, and was nothing more than a stipulation for a change of the specification of the work as stated in the contract at fixed prices provided therein, but did not give them any control over the contractor as to the manner or otherwise in which he should conduct the blasting. The charter of St. Paul gives the Commissioners the right to *direct and control the persons employed*, which is a very different affair.

We think it unnecessary to discuss the point made by the Plaintiff, that the city is liable as the owner of the land upon which the pit was dug. The case of *Bush vs. Steinman*, 4 *Bos. & Pull.* 404–409, upon which this view is mainly based, has been often doubted by high authority, and has been limited in its force to cases of nuisance. The Defendant is liable in either of the views we have presented, and the judgment should be affirmed.