## PARDINI *v.* CITY OF RENO

No. 2768

February 6, 1928.                         263 P. 768.

1. MUNICIPAL CORPORATIONS—PROVISO THAT NOTHING IN CHARTER SHOULD MAKE CITY LIABLE FOR NEGLIGENCE HELD NOT EXEMPTION OF CITY FROM LIABILITY FOR DEFECTIVE STREETS.

Reno city charter, art. 16, sec. 2, providing that nothing herein should be so construed as to make city liable to any person by reason of negligence of city or its officers, *held* legislative declaration that nothing contained in charter should be construed so as to make city liable for its own negligence or that of its officers, and does not exempt city from liability for injuries from defects in streets caused by its negligence.

2. MUNICIPAL CORPORATIONS—FOR MUNICIPALITY'S FAILURE TO KEEP STREETS IN REPAIR, THERE IS IMPLIED COMMON LAW LIABILITY FOR RESULTING INJURY.

For chartered municipality's failure to keep streets in repair, there is an implied common law liability for resulting injury.

3. MUNICIPAL CORPORATIONS—CHARTER NOT EXPRESSLY EXEMPTING CITY FROM LIABILITY, CITY WAS IMPLIEDLY LIABLE FOR ITS FAILURE IN FAILING TO KEEP STREETS SAFE.

Since Reno city charter, giving it exclusive control over streets, does not expressly exempt city from liability for failure to discharge its implied duty to make streets reasonably safe for travel, and under art. 12, sec. 10, as amended by Stats. 1923, p. 113, c. 77, it was optional with city whether city authorities exercise powers to improve streets, city was impliedly liable for failure to discharge implied duty to keep streets reasonably safe for travel.

4. MUNICIPAL CORPORATIONS—DUTY OF CITY, IMPLIED FROM EXCLUSIVE CONTROL OVER STREETS, IS PRIVATE CORPORATE DUTY, NECESSARILY IMPLIED.

Duty of the city of Reno, implied from grant of exclusive control over its streets, is not a public duty owing to public alone, but a private corporate duty, necessarily implied from grant.

5. MUNICIPAL CORPORATIONS—IMMUNITY EXTENDED TO LEGISLATIVE OR DISCRETIONARY ACTS OF MUNICIPALITY DOES NOT APPLY TO CORPORATE ACTS PURELY MINISTERIAL IN CHARACTER.

Immunity extended to legislative or discretionary acts of a municipal corporation does not apply to corporate acts of purely ministerial character, and hence, where injury resulted from city's negligence in not carrying improvements as planned into execution, doctrine that city, in exercise of discretionary power in planning improvement, is not liable for negligence in civil action was inapplicable.

6. MUNICIPAL CORPORATIONS—FAILURE TO ERECT RAILING FOR SAFETY OF STREET TRAVELERS HELD ACTIONABLE NEGLIGENCE.

While duty of city to maintain railing along retaining wall for protection of vehicular travel was not absolute, nevertheless, where railing was reasonably necessary for security of street travelers, which from its nature would otherwise be unsafe, and erection of which would have prevented injury, it was actionable negligence not to construct or maintain such railing.

7. MUNICIPAL CORPORATIONS—WHETHER CITY WAS NEGLIGENT IN SUFFERING RETAINING WALL TO REMAIN WITHOUT RAILING WAS QUESTION OF FACT.

Where city, in improving street, provided for erection and maintenance of railing along concrete retaining wall in plans adopted for improvement, whether city was negligent in suffering retaining wall to remain without railing was a question of fact, not raised by demurrer to the complaint.

8. DEATH—MOTHER, AS ADMINISTRATRIX, COULD MAINTAIN ACTION FOR DEATH OF MINOR CHILD, WHERE COMPLAINT ALLEGED FACTS AUTHORIZING RECOVERY OF EXEMPLARY AND COMPENSATORY DAMAGES.

In action against city for negligence in causing death of a minor, complaint sufficient to authorize recovery both of exemplary and compensatory damages was properly brought by mother as administratrix of minor daughter under Rev. Laws, 5647, 5648; sec. 4996, as amended by Stats. 1913, c. 35, sec. 2, providing that complaint be brought in name of father or mother, not being applicable.

### C. J.–CYC. REFERENCES

DEATH—17 C. J. sec. 116, p. 1263, n. 6.

MUNICIPAL CORPORATIONS—43 C. J. sec. 1704, p. 929, n. 69; sec. 1707, p. 932, n. 88; sec. 1755, p. 974, n. 44; p. 976, n. 48; sec. 1759, p. 979, n. 81 (new); sec. 1836, p. 1060, n. 48; sec. 2044, p. 1279, n. 84.

APPEAL from Second Judicial District Court, Washoe County; *Clark J. Guild,* Judge.

Action by Virginia Pardini, as administratrix of the estate of Emma K. Revera, deceased, against the city of Reno. From a judgment dismissing the action, entered on an order sustaining demurrer to amended complaint,

plaintiff appeals. **Reversed, with leave to defendant to answer.** (DUCKER, J., dissenting.)

*Prince A. Hawkins, Price & Hawkins,* and *Clyde D. Souter* of Counsel, for Appellant:

Exemption from recognized liability cannot be sustained unless expressly given; doubtful case is resolved against corporation. 8 McQuillan Mun. Corp. sec. 2064. City may be sued for tort. Fleming v. Memphis, 148 SW. 1057.

Question is whether proviso removes city from application of Rev. Laws, 5649, and kindred sections. Proviso is construed with reference to immediately preceding parts, forms part thereof, is limited thereto, and is not applicable to unrelated parts. 2 Lewis Suth. Stats. Const., sec. 352. "Nothing herein shall be so construed as to make the city liable," clearly applies to things provided therein. City does not possess power which legislature does not. 19 R. C. L. 706. Unfair and discriminatory laws shall not be passed. Durkee v. Janesville, 28 Wis. 464.

Act may be void though not expressly prohibited by constitution, if it is contrary to principles of social compact. Britton v. Board, 61 P. 1115; Calder v. Bull, 3 Dall. 387.

Where city has power to remove nuisance which it creates or permits to remain in streets, it is liable for injuries resulting therefrom. Barnes v. Carson, 33 Nev. 17; Burks v. South Omaha, 113 NW. 241. There are majority and minority lines of decisions as to whether street improvement work is ministerial or governmental. McDonough v. Virginia City, 6 Nev. 90; Barnes case, supra.

Claims arising ex delicto need not be presented before suit brought. "Indeed, we do not see how such claims could be audited." Sheilds v. Durham, 23 SE. 794; Adams v. Modesto, 63 P. 1083. City cannot determine value of life of person killed through its neglect. Nance v. Falls City, 20 NW. 109.

Personal representative of decedent may maintain

action. Rev. Laws, 5648, 4997; 9 McQuillan, sec. 2064; Keever v. Mankato, 129 NW. 158.

Complaint supports exemplary damages. Lange v. Schoettler, 47 P. 139; Perry v. Tonopah M. Co., 13 Fed. (2), 865.

*LeRoy F. Pike,* City Attorney, and *E. F. Lunsford* of Counsel, for Respondent:

Excepting mere statement alleged as conclusion, amended complaint shows excavation was outside part of street used for vehicles, and therefore was not menace or nuisance to them. Sidewalks cannot lawfully be used by them. Mercer v. Corbin, 20 NE. 132. Cities have wide discretion to determine how much of highway shall be used for vehicular and for pedestrian travel. 2 Elliott, Roads and Streets (4th ed.), 801. Appellant's citations, dealing with obstructions in streets, are not applicable. Anderson v. Feutch, 31 Nev. 501, was based on negligence in digging and leaving unguarded mine shaft in violation of express statute. There is no similarity either in that case, or Barnes v. City of Carson, 33 Nev. 17, or Perry v. Ton. M. Co., 13 Fed. 865.

Work was improving streets under section 10a of charter—a governmental act; though negligently done, city would not be liable. 3 Dillon (5th ed.) secs. 1128, 1129; 28 Cyc. 1257. Rule of immunity extends to discretionary power, though plan be defective, or judgment erroneous. 28 Cyc. 1262; Tronty v. Sacramento, 61 Cal. 271; White, Mun. Neg. sec. 31; Detroit v. Beckman, 34 Mich. 125; 6 Dillon, 1626; 29 Cyc. 1285; Blyhl v. Waterville, 58 N. W. 817; Hoye v. Philadelphia, 81 Pa. 44. City need not maintain barriers along embankment to protect vehicles. Roberts Adm. v. Baton, 288 N. Y. 420.

Proviso is not limited to section immediately preceding. Legislative intent must be considered without regard to position of proviso. Wartensleben v. Haithcock, 1 So. 38; United States v. Scruggs, 156 Fed. 940; 25 R. C. L. 984. Clear meaning is that no court shall so construe charter as to make city liable.

City may be specially exempted from liability by its charter. 28 Cyc. 1343.

Deceased had mother and father living. Plaintiff should have sued in individual, not representative, capacity. Rev. Laws, 4996, 4997, 5647, et seq.

## OPINION

By the Court, SANDERS, C. J.:

This action was instituted to recover damages for the death of Emma K. Revera, which was occasioned by the automobile in which she was riding falling over an unguarded concrete retaining wall constructed by the authorities of the city of Reno at the intersection of Ralston and Maple Streets within the city.

The action was brought under sections 5647 and 5648, of the Revised Laws of Nevada, in the name of Virginia Pardini, as the personal representative of the deceased, against the city of Reno alone. The case comes to this court upon appeal from the judgment of dismissal of the action, entered upon an order sustaining the defendant's demurrer to the plaintiff's amended complaint.

The legal questions presented by the rulings upon the demurrer are: First, does the statute which constitutes the defendant's charter exempt the city from liability for a wrongful death occasioned by the neglect of the city to make and keep its streets reasonably safe for travel? Secondly, has plaintiff, as the personal representative of her deceased minor daughter, legal capacity to sue?

The undisputed facts are these: The statute which constitutes the defendant's charter grants to the city council, among other things, exclusive authority and control over the streets of the city, coupled with power to raise means for their maintenance, improvement, protection, and repair. In the exercise of their powers, the authorities of the city undertook to improve Ralston and Maple Streets at the place where they intersect by dividing each street into two public ways, a high street

and a low street. On the dividing line of each street there was constructed a concrete retaining wall varying in height from three to ten feet. On the west side of the wall on Ralston and on the north side of the wall on Maple the street was filled, graded, and paved level with the top of said wall for its entire length. Prior to, and on, December 28, 1924, the high and low portions of each street were open and used by the public for travel. On said date an automobile in which Emma K. Revera was riding was proceeding northerly along the high and paved portion of Ralston Street, when it fell over said concrete retaining wall, and dropped a distance of ten feet, killing her. At the time of her death she was 17 years of age, unmarried, and contributing by her labor to the care, support, and maintenance of herself and her mother. She left surviving her as her only next of kin her mother, Virginia Pardini. Letters of administration on her estate were issued to her mother, who caused to be filed with the clerk of the city of Reno a claim or demand for $20,000 as damages accruing from the death of her daughter, which claim or demand was considered by the city council and rejected. Thereupon this action was begun by plaintiff in her capacity as administratrix to recover both punitive and compensatory damages accruing to her from the death of her daughter.

The complaint contains two charges of negligence: One, that the defendant, with full knowledge of the dangerous condition in which Ralston and Maple Streets were left by the work undertaken for their improvement, willfully, wantonly, and negligently placed no railing, barrier, or other protection along and on top of said retaining wall for the safety of travelers. The other, that the defendant, with full knowledge of the dangerous condition of said streets, willfully, wantonly, and negligently failed, refused, and neglected to complete the work of construction of said retaining wall according to the plans and specifications adopted for the improvement of said streets by the erection and maintenance thereon of a strong iron guard rail for its entire

length. The complaint assumes that it was the duty of the city, under the grant to it of exclusive authority and control over its streets, coupled with power to raise means for their improvement, to exercise ordinary care and diligence to see that its streets were reasonably safe for travel, and charges that the death of the plaintiff's intestate was caused by its neglect to perform this duty.

1. The first legal question presented by the defendant's general demurrer to the complaint arises out of a proviso appearing in section 2 of article 16 of the statute which constitutes the defendant's charter, which reads:

"Provided, nothing herein shall be so construed as to make the city liable for any damages suffered or incurred by any person for or by reason of any neglect of the city or any of its officers."

The trial court was of the opinion that the proviso defeated plaintiff's right of recovery in this action. The proviso is nothing more than a legislative declaration that nothing contained in the act shall be construed so as to make the city liable for any damages suffered or incurred from its own neglect, or the neglect of any of its officers. If, then, there is nothing in the act which either expressly or by necessary intendment makes the city liable for damages suffered or incurred from its negligent failure to keep its streets in safe condition, the proviso is ineffective to defeat plaintiff's right to recover. The only provision contained in the defendant's charter with respect to streets is to be found in article 11, which creates the office of superintendent of streets, and in section 10 of article 12, as amended by the Statutes of 1923, p. 113, c. 77, which provides that the city council, among other things, shall have power to lay out, extend, change the grade, open, vacate, and alter the streets and alleys within the city, and by ordinance require and provide for the improvement thereof, and for that purpose, and for the purpose of defraying the expense thereof, may divide the city into districts. There is nothing in the language of section 10 as amended imposing the exercise of these powers upon the

council as a duty. The section, as we interpret it leaves it optional or discretionary with the corporate authorities whether they will exercise the powers or not.

2. Such was the interpretation placed in a similar provision contained in the statute which constituted the charter of Virginia City. McDonough v. Virginia City, 6 Nev. 90. It was held in that case that, even though Virginia City under its charter was not obliged to open a street, nor to repair one after it was opened, yet, if a street, when opened, was left in such a defective condition that injuries resulted therefrom to persons exercising proper care, the city was liable therefor, for the reason that, if the city undertake to exercise its optional powers over its streets, the act must be done with that degree of care for the rights and personal safety of individuals which natural persons are required to exercise under similar circumstances. This doctrine is but the affirmance of the rule favored by the great majority of courts that for a failure to keep streets in repair there is an implied common law liability for resulting injury resting upon every chartered municipality. Cooley's Municipal Corporations (Hornbrook Series), sec. 118. The latest expression of the doctrine may be found in 43 Corpus Juris, 974, where it is stated that in most jurisdictions municipalities are held liable, irrespective of any statute expressly imposing liability, for injuries from negligent failure to keep streets in a safe condition, on the ground of implied liability, the authorities holding that, where such corporations are invested with exclusive authority and control over the streets, and with means for their construction, improvement, and repair, a duty arises to the public from the nature of the powers granted to keep the streets in a reasonably safe condition, and a corresponding liability exists on the part of the municipality to respond in damages to those injured by a neglect to perform the duty, *unless the charter giving such exclusive control expressly exempts the municipality from liability for failure to discharge the implied duty.*

3, 4.  Since the defendant's charter which gives to it exclusive authority and control over its streets does not expressly exempt the city from liability for failure to discharge its implied duty to make and keep its streets reasonably safe for travel, we are of opinion that the rule of implied liability obtains, notwithstanding the omnibus proviso which purports to cover everything, but really touches nothing in particular.  The charter of the defendant does not create a liability for neglect to exercise ordinary care and diligence to see that its streets are reasonably safe for travel.  So, if the plaintiff can recover in this action, it is because of the doctrine of the defendant's implied common law liability, and not because of anything contained in its charter. The duty of the defendant, implied from the grant of exclusive control over its streets, is not a public duty owing to the public alone, but a private, corporate duty, which (when not expressly imposed) is necessarily implied from such grant.  Shearman & Redfield on Negligence (6th ed.) sec. 289.  The proviso under consideration was introduced into section 2 of article 16 to avoid misinterpretation, and it, as constructed, cannot by implication be extended into a positive enactment to specifically exempt the city from liability for injuries caused by defects in its streets.  This conclusion renders it unnecessary for us to determine whether the enactment of the proviso exceeded the just powers of the legislature, and is therefore unconstitutional.

5.  Counsel for defendant contend that, in planning and designing the improvement of the streets described in the complaint, the city, through its legislative body, exercised a judicial or discretionary power, and for such exercise it is not liable in a civil action.  We do not understand from the complaint that the plaintiff seeks to recover for an injury resulting from a defective plan designed for the improvement of Ralston and Maple Streets, but for one resulting from the negligence of the defendant in not carrying the improvements as planned into execution.  The prosecution of the work itself—the carrying of the improvements into execution—being

purely ministerial in character, the doctrine invoked has no application. The immunity extended to legislative or discretionary acts of a municipal corporation does not apply to corporate acts of a purely ministerial character. 43 Corpus Juris, 929, citing McDonough v. Virginia City, supra.

6, 7. Counsel for defendant contend that the city was under no duty to erect and maintain a railing or barrier along and on top of said retaining wall to prevent vehicles leaving the traveled way from going over the wall. We concede that such duty is not absolute but, nevertheless, where a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the injury, it is actionable negligence not to construct and maintain such railing or barrier. 43 Corpus Juris, 1060; 4 Dillon, Municipal Corporations, sec. 1696; Elliott, Roads and Streets, sec. 796. The authorities of the city having made provision for the erection and maintenance of a railing or barrier along the concrete retaining wall in the plans adopted for the improvement of said streets, whether it was negligence to suffer the retaining wall to remain without any railing or barrier is a question of fact concerning which we express no opinion.

8. The second cause assigned for demurrer is that the plaintiff, Virginia Pardini, as administratrix of the estate of her deceased minor daughter, is not the proper party plaintiff to maintain this action. As stated at the outset, the action was brought under sections 5647 and 5648 of the Revised Laws of Nevada. Defendant contends that the action can be maintained only under section 4996, Revised Laws, as amended by the Statutes of 1913, p. 28, c. 35, sec. 2; 3 Revised Laws, p. 3326. Section 5647 reads:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof then, and in every

such case, the persons who, or the corporation which would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured; and although the death shall have been caused under such circumstances as amount in law to a felony."

Section 5648 reads:

"The proceeds of any judgment obtained in any action brought under the provisions of this chapter shall not be liable for any debt of the deceased; provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child; but shall be distributed as follows:

·"1. If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then, equally to each, the grandchild or children taking by right of representation; if there be no husband or wife, but a child or children, or grandchild or children, then to such child or children and grandchild or children by right of representation; if there be no child or grandchild, then to a surviving father or mother; if there be no father or mother, then to a surviving brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons; provided, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person; and, provided, further, the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Section 4996 as amended reads:

"The father and mother jointly, or the father or the mother, without preference to either, may maintain an

action for the death or injury of a minor child, when such injury or death is caused by the wrongful act or neglect of another; * * *. Any such action may be maintained against the person causing the injury or death, or, if such person be employed by another person who is responsible for his conduct, also against such other person."

No pretense to originality is made by the writer in the interpretation and application of the sections quoted. They were reviewed, discussed, and applied by Judge Farrington in Perry, Administrator, v. Tonopah Mining Co. of Nevada (D. C.) 13 F. (2), 865.

The conclusion reached in Perry's Case, quoting the syllabus, is:

"Under Rev. Laws, Nevada, sections 5647, 5648, providing as to actions for wrongful death in general that 'every such action shall be brought by and in the name of the personal representative * * * of such deceased person,' the proceeds to be distributed as specified, and section 4996, providing that 'a father or, in case of his death or desertion of his family, a mother, may maintain an action for the death or injury of a minor child,' the remedy of a father for death of his minor child was in his own right and exclusive, and he could not maintain an action for the death as administrator."

Notwithstanding this conclusion, the court, in the course of the opinion, says:

"Our practice act confers a right of action on the parent for the death of a minor child; upon the guardian for the death of his ward, if of lawful age; upon the heirs or personal representatives for the death of a person not a minor. These provisions, however, do not cover the whole field of injuries which may result from wrongfully caused death. For instance, a boy of 20 years may at the same time be maintaining a wife, supporting his parents, and assisting his brothers and sisters. In such a case all would suffer pecuniary injury by reason of his death, but there could be no recovery

by the widow, brothers, and sisters, except under sections 5647 and 5648, in an action by the personal representative. Again, the death might be caused by acts so willful, wanton, and reckless as to demand exemplary damages; such damages are provided for in section 5648 only, and cannot be recovered unless action is brought by a personal representative of the deceased under that section. See note to Bond v. United Railroads, Ann. Cas. 1912c, 67.

"There was, therefore, ample reason for retaining the act of 1871, as amended, in the Revised Laws of 1912. It has an independent scope, and serves a purpose which cannot be accomplished under sections 4996 and 4997. I am of the opinion that an action can be maintained under those sections for the wrongful death of a minor child.   *   *   *"

The averments of the complaint in this case conform to the reasoning employed by Judge Farrington in arriving at the conclusion that in a proper case an action can be maintained under sections 5647 and 5648 for the wrongful death of a minor child. The complaint alleges facts sufficient, if sustained, to entitle plaintiff to recover both exemplary and compensatory damages. It alleges that, at the time of her wrongful death, the plaintiff's daughter was contributing to the care, support, and maintenance of herself and plaintiff, and that her death was proximately caused by the willful, wanton, reckless, and negligent act of the defendant. We are of the opinion that the action was properly brought under sections 5647 and 5648, and the court below erred in sustaining the defendant's demurrer for defect in the party plaintiff.

The judgment is reversed, with leave to the defendant to answer.

COLEMAN, J., concurring:

I concur in the conclusions reached in the foregoing opinion, but will briefly state my views upon two of the points involved.

I cannot agree to the contention that the authorization by the city of the work which was done was in the exercise of a governmental function, of such a quasi judicial nature as to exempt the city from liability, as is contended.

It is true that a city can exercise a certain discretion without incurring liability because thereof; but to go to the length contended for by the city and carry such contention to its ultimate conclusion, would result in saying that the city might plan a street full of death traps, construct them in accordance therewith, and yet be free from liability. Such is not, and never was, the law. The latest case stating the law applicable to the situation in hand which we have been able to find is that of Perrotti v. Bennett, 94 Conn. 533, 109 A. 890, where it is said:

"The real question in the case is that upon which the trial court placed its decision. Did this defect in the highway inhere in the original plan of construction of the highway  The finding by the trial court that the defect was in the plan does not settle the point. The principle of nonliability for error in the adoption of the plan for a municipal improvement is fully established. Cases to which the doctrine is applicable are not numerous. Some cases are mistakenly conceived to fall within the doctrine. Other cases have led to exceptions which have greatly limited the doctrine. Whenever the plan in its execution creates a nuisance, or causes direct injury to another, liability follows for the damage done. Danbury & Norwalk R. Co. v. Norwalk, 37 Conn. 109; Buckley v. New Bedford, 155 Mass. 64, 29 NE. 201; Seifert v. Brooklyn, 101 N. Y. 136, 4 NE. 321 [54 Am. Rep. 664]; 19 R. C. L. p. 1091, sec. 376. The execution of the plan, or the operation of the improvement in accordance with the plan, are ministerial acts, and if the plan be executed or the improvement be operated with negligence, the municipality will be liable for the resulting damage. Jones v. New Haven, 34 Conn. 1. If the plan be so designed that it makes, for example,

the street or sewer dangerous, the municipality will be liable for the resulting damage. Collett v. New York City, 51 App. Div. 394, 64 N. Y. S. 693; 28 Cyc. 1371. If the plan be defective from the beginning, or if its defect originate shortly after, the completion of the improvement, and injury be ultimately necessarily the inevitable or probable result, the municipality will be liable. Clearly this is just. Upon this assumption the city created the defective improvement and either knew of it or was chargeable with knowledge of it. Every moment of its continuance was an act of negligence by the municipality. The injury grew out of and was attributable to this negligent continuance and not to the plan so defectively conceived of, but to the operation of the plan after its defective condition was known or ought, in the exercise of reasonable diligence, to have been known to the municipality. As soon as the fault of the construction is known, or ought to be known by the municipality, it is in duty bound to remedy the defect if this can be done, or if not, to cease the operation of this public agency until the defect is remedied; the penalty of refusal after reasonable notice will be the liability in damages for the injuries caused by the defect. Dayton v. Taylor, 62 Ohio St. 11, 16, 56 NE. 480; Ward v. Salt Lake City, 46 Utah, 616, 151 P. 905; Beebe v. Scott's Bluff County, 92 Neb. 504, 138 NW. 737; Collett v. New York City, 51 App. Div. 394, 64 N. Y. S. 393 [693]; Teager v. Flemingsburg, 109 Ky. 746, 60 S.W. 718 [53 L. R. A. 791, 95 Am. St. Rep. 400]; Gould v. Topeka, 32 Kan. 485, 4 P. 822 [49 Am. Rep. 496]; 4 Dillon on Municipal Corporations (5th ed.), sec. 1746. The circumstances surrounding the defect must be such as to charge the public authorities with notice of it. Stoddard v. Winchester, 154 Mass. 149, 151, 27 NE. 1014 [26 Am. St. Rep. 223]; Dillon on Municipal Corporations (5th ed.), sec. 1746. In Conlon v. St. Paul, 70 Minn. 216, 218, 72 NW. 1073, the Supreme Court of Minnesota said: 'But, if there is such gross error of judgment as to show that in fact the city authorities never exercised an intelligent judgment at all, the city

may be liable for constructing or maintaining the improvement on the defective plan or scheme adopted.' Other authorities speak similarly."

In Klipp v. City of Hoyt, 99 Kan. 14, 16, 160 P. 1000, 1001, in disposing of a similar question, the court said:

"No matter how carefully plans of improvement were considered, and no matter how faithfully the adopted plan was executed, if the result were actual peril to persons using the street with due care the duty to make and keep the street reasonably safe for travel was not fulfilled and an action would lie in favor of one suffering injury consequent upon the breach of duty."

See, also, Quest v. Town of Upton, 36 Wyo. —, 252 P. 506; City of St. Paul v. Seitz, 3 Minn. 297 (Gil. 205), 74 Am. Dec. 753; Noble v. City of Richmond, 31 Grat. (Va.) 271, 31 Am. Rep. 726; Wilson v. Wheeling, 19 W. Va. 323, 40 Am. Rep. 780; Evans v. City of Hutchinson, 99 Kan. 477, 162 P. 342.

But, if the rule contended for were accepted, the city was guilty of negligence, as I understand the allegations of the complaint, in that the plans adopted provided that a guard should be constructed along the wall in question, since none was erected.

Furthermore, the complaint alleges, as contended by counsel for the plaintiff, that the place where the deceased was killed is inherently dangerous. This being true, the complaint clearly states a cause of action, and, under the well-recognized rule that if a complaint states a cause of action upon any theory, a general demurrer is not good.

It is also said that the city is not liable for its negligence nor for that of its officers. This contention is based upon the proviso in section 2, art. 16, of the charter of the city. Section 1 provides for the regulation of salaries and compensation for services by ordinance; the filing of claims against the city; and matters connected therewith. Section 2 provides that the holder of any claim "mentioned in this charter (of which plaintiff's is not one) which has been rejected in whole or in part may commence suit within six months from the

date of its rejection, and other matters incident to such suit, and concludes with a proviso which reads:

"Provided, nothing herein shall be so construed as to make the city liable for any damages suffered or incurred by any person for or by reason of any neglect of the city or any of its officers."

Counsel for the city say:

"It was the contention of respondent in the court below, as it shall be in this court, that a proper construction of the proviso as a matter of concrete legislation, requires it to be read substantially as follows:

" 'The provisions of this act notwithstanding, the city shall not be liable for any damages suffered or incurred by any person for or by reason of any neglect of the city or any of its officers.'

"To give to the proviso in question any different meaning, would be to charge the legislature with employing language entirely meaningless; a thing which the courts cannot and will not do and 'a statute should be so construed as to avoid absurd results.' "

It is a well-recognized rule that the courts should so construe a statute as to avoid absurd results, and that the intention of the legislature controls in the construction of a statute. But, when the language used is clear, plain, and unambiguous, the legislature must be understood to mean just what it has plainly and explicitly expressed. Odd Fellows Bank v. Quillen, 11 Nev. 109. In the case last cited this court quoted with approval language to the effect that, to ascertain the legislative intent, the first resort in all cases is to look to the natural significance of the words employed. If, thus regarded, the words convey a definite meaning, which involves no absurdity, and no contradiction between different parts of the same statute, then that meaning, apparent upon the face of the statute, is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and the courts have no right to add to, or take away from, that meaning.

The language of the proviso is clear, unambiguous, and not subject to any interpretation save that expressed. There can be no doubt that, if a sentence of a statute or part of a sentence. clearly expresses an idea, but the entire statute clearly shows a contrary intention, the courts will give effect to the clear purpose of the statute. State v. Brodigan, 37 Nev. 245, 141 P. 988. But such a rule, we emphasize, is applicable only when the language of the statute clearly expresses a contrary intent, or a contrary view is clearly manifested from the history of the legislation on the subject, or the wrongs or evils sought to be remedied. No such situation is here presented. Look where we may we find no language expressing clearly or dimly any such interpretation for the proviso as is contended for by the city, either in the section in which the proviso is found, or elsewhere. In the face of this situation we would certainly be straining to the breaking point every rule to adopt the contention of the city.

Besides, to give the proviso the interpretation contended for would work manifest injustice, and the courts do not favor construing a statute, even if doubtful, so as to work injustice, as the construction contended for by the city would do. Goldfield Con. M. Co. v. State, 35 Nev. 183, 127 P. 77.

Besides, it is a well-known rule that:

"An exemption from a recognized liability cannot be claimed unless it is clearly and expressly given; and a doubt as to whether a particular case falls within the exemption will be. resolved against the municipality." 43 C. J. 932, sec. 1707.

In the face of the rule just stated, would it be seriously contended that the proviso would be explicit and broad enough to exempt the city from liability in case there were a general statute in this state to the effect that all municipal corporations should be liable for their negligence and the negligence of their officers? We think not. We cannot see any difference if such were the fact from the situation here existing where the common law liability exists.

Furthermore, if we were to accept the interpretation contended for, there is nothing in the proviso exempting the city from liability arising as the result of an injury sustained due to work of the city which is inherently dangerous.

DUCKER, J., I dissent.

I recognize the rule stated by my esteemed associates that a municipality cannot claim exemption from a recognized liability, unless it is clearly and expressly given; and a doubt as to whether a particular case falls within the exemption will be resolved against the municipality. In my opinion, the question is free from doubt. The case made out by the amended complaint, which is based on the neglect of city officers in making improvements in streets, falls squarely within the exemption declared by the proviso.

I agree with the statement that the proviso is clear, unambiguous, and not subject to any interpretation save that expressed. The thought expressed, as I comprehend it, is that the city is not liable for any damages suffered or incurred by any person for or by reason of any neglect of the city or any of its officers, and nothing in the charter shall be so construed as to make it liable. It would tax my imagination to believe that the legislature, after investing the officers of the city with power over its streets, and being careful to prescribe a rule that nothing in the grant shall be so construed as to make the city liable for the neglect of any of its officers, intended at the same time that the city should be subject to a common law liability for the same cause; or, in other words, that it was intended to grant immunity with one hand and withhold it with the other. Why grant an exemption which does not exempt?

It is said that to give the proviso the interpretation contended for by the city would work manifest injustice, and the courts do not favor construing a statute, even if doubtful, so as to work an injustice. In a number of states such an exemption is not considered

inequitable. As said in Wilmington v. Ewing, 2 Pennewill (Del.) 106, 43 A. 307 (45 L. R. A. 79) :

"The great burden imposed upon municipal corporations by their unrestricted liability for injuries occasioned by defective streets and sidewalks, has doubtless been the cause of the frequent modification or removal of such liability."

Be that as it may, if the exemption is unjust, the remedy should be afforded by the body which enacted it. The legislature is the exclusive judge of the policy of the enactment, and has ample power in the premises. See Wilmington v. Ewing, supra, and cases reviewed therein. Morrell v. City of Phœnix, 16 Ariz. 511, 147 P. 732.

The judgment should be affirmed.