NELLIE J. HARRIGAN, Appellant, *v.* CITY
OF RENO, Respondent.

No. 6121

October 8, 1970                    475 P.2d 94

[Rehearing denied November 9, 1970]

*Erickson & Thorpe,* of Reno, for Appellant.

*Clinton E. Wooster,* City Attorney, and *Leslie A. Legget,*
of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Nellie J. Harrigan appeals from an order granting summary judgment which had the effect of releasing the City 'of Reno from any responsibility for her injuries which occurred on the municipal parking lot adjacent to the city hall in Reno.

She purchased a parking ticket but it blew out of her car as she placed it on the dashboard. It landed near the edge of the lot close to a dropoff of several feet. No guardrail existed to protect people, nor were there any signs to warn them about the edge, although bumper strips and a six-inch concrete retaining wall had been placed along the edge of the dropoff. When Mrs. Harrigan, who was 74 years old at the time, bent over to pick up her ticket near the front wheel of a car parked by the dropoff a gust of wind blew her over the edge, resulting in injuries.

The city moved for summary judgment, claiming immunity on the ground that failure to put up a guardrail or warn of the dropoff was an act of discretion for which the city was exempted from liability. While NRS 41.031 constitutes waiver of sovereign immunity by the state, its agencies and political subdivisions, the succeeding section recites an exception if the act complained of is part of the discretionary functions of government for which the government does not waive the immunity. NRS 41.032 reads: "No action may be brought under NRS 41.031 or against the employee which is: . . . (2) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any employee of any of these, whether or not the discretion involved is abused." The issue then is whether the city can be sued at all.

1. The question concerns the legal significance of the waiver of sovereign immunity as it applies to a municipality that voluntarily provides a parking lot, although under no obligation to do so.

We eliminate first the concept that the government is amenable to lawsuits when it is engaged in a proprietary capacity.

That doctrine was applied in Town of Douglas v. York, 445 P.2d 760 (Wyo. 1968); Stringfield v. City of Hackensack, 171 A.2d 361 (N.J. Super. 1961); Zaras v. City of Findlay, 176 N.E.2d 451 (Ohio App. 1960); and Rhodes v. City of Palo Alto, 223 P.2d 639 (Cal.App. 1950), but the tort liability act was not a consideration in those cases. The result we reach, however, is based upon the involvement of tort liability and waiver of immunity by a sovereign. The governmental-proprietary test no longer applies.

The principle that municipalities are subject to liability is a departure from the historical doctrine of sovereign immunity. The purpose of the waiver of immunity statute was to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated. Indian Towing Co., Inc. v. United States, 350 U.S. 61, 65–69 (1955).

In determining whether this is a proper case for departure from governmental immunity we must first ask what the act of the city was. The answer is, that it built a parking lot. The city need not have constructed the parking lot because that was an exercise of discretion based upon policy, that is, whether or not the municipality would provide a public parking facility adjacent to its city hall for the convenience of the people. Its decision to do so was a policy, or discretionary, decision. Once having decided to construct a parking lot the city was obligated to use due care to make certain that the parking lot met the standard of reasonable safety for those who would use it. Such was the operational stage for which the statute does not exempt the city from liability if due care has not been used and an injury is caused.

Counsel for respondent refers to Pardini v. City of Reno, 50 Nev. 392, 263 P. 768 (1928), as authority for his position that the failure to install a guardrail was a planning decision which was, in turn, a matter of discretion. A part of Chief Justice Sanders' opinion, at page 400, implies this, but the matter is clarified at page 401: "[W]here a railing or barrier is reasonably necessary for the security of travelers on the street, which from its nature would otherwise be unsafe, and the erection of which would have prevented the injury, it is actionable negligence not to construct and maintain such railing or barrier." Nor was possible liability in Pardini v. City of Reno, supra, predicated on the city's failure to construct a guardrail

in accordance with the plan, as was implied, but on its failure to construct one at all. Like the decision of the City of Reno in the instant case, the failure of the City of Reno to construct the guardrail in Pardini v. City of Reno, supra, came at the operational state, *after* the discretionary decision to construct the roadway at that location had been made.

Nevada's discretionary exception provision is identical to that of the Federal Tort Claims Act, 28 U.S.C., Section 2680 (a) (1965). Federal courts distinguish the policy stage, where the discretionary exception applies, from the actual construction and operation of the project. The latter may subject the sovereign to liability. United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962); American Exchange Bank v. United States, 257 F.2d 938 (7th Cir. 1958); Swanson v. United States, 229 F.Supp. 217 (N.D. Cal. 1964); Montellier v. United States, 202 F.Supp. 384 (E.D.N.Y. 1962); Jemison v. The Duplex, 163 F.Supp. 947 (S.D. Ala. 1958); see also Rogers v. State, 459 P.2d 378 (Haw. 1969).

While whether or not to put in a parking lot is a policy decision, the rules of safety cannot be ignored by the government once the affirmative act of construction is undertaken. In this case, because the negligent conduct of omitting danger signs and guardrails was part of the operational phase, it is actionable.

2. The city also argues that Mrs. Harrigan was contributorily negligent because she could have and therefore should have seen the danger of the dropoff and avoided it.

The accident occurred at 11:00 a.m. during the daylight hours when visibility was clear despite hints of impending snow. In Rogers v. Tore, Ltd., 85 Nev. 548, 459 P.2d 214 (1969), we held that the invitee's knowledge of the danger does not inevitably bar recovery. As in that case, certain factors appear here that are for the determination of a jury. Had she not retrieved her ticket she would have been required to pay for another or would have been subject to penalties. Human nature rebels at both.

Because the city was in control of the parking lot it owed to the plaintiff, a business invitee, the duty to use reasonable care to keep the premises in a reasonably safe condition for the invitee's use. Whether that duty was discharged and whether

Mrs. Harrigan's conduct was negligence without which her injuries would not have been suffered are questions of fact for the jury. Dawson v. Payless for Drugs, 433 P.2d 1019 (Ore. 1967); Leonardo v. Great Atlantic and Pacific Tea Co., 164 N.E.2d 900 (Mass. 1960); Martin v. Fox West Coast Theaters Corp., 108 P.2d 29 (Cal.App. 1940).

3. Although argued by the respondent, the Reno Municipal Code, Section 11.08.140, and the Uniform Building Code provisions of Reno do not apply, nor does NRS 41.033.

Reversed and remanded for further proceedings in accordance with this opinion.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.